UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| PFIZER INC.,<br><br>      Plaintiff,<br><br>v.<br><br>REGOR THERAPEUTICS INC., QILU REGOR THERAPEUTICS INC., XIAYANG QIU, MIN ZHONG, and DOES 1-10,<br><br>      Defendants. | Case No.: 3:22CV190 (JAM)<br><br>January 6, 2023 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION BY PLAINTIFF

   The Defendants Qilu Regor Therapeutics Inc., Regor Therapeutics Inc., Dr. Min Zhong, and Dr. Xiayang Qiu (collectively, the "Defendants") respectfully submit this brief in support of their motion for an Order compelling the production of documents and communications that Plaintiff Pfizer Inc. ("Pfizer" or "Plaintiff") exchanged with the Federal Bureau of Investigation ("FBI"), which Pfizer has withheld on the basis of a claimed privilege. (Ex. A, Pfizer's Amended Privilege Log at entry nos. 526-531, 1135, 1137, 1140, 1144, 1473, 1477, 1479, 1481-1485, 1487-1489, 1491-1495, 1499-1501, 1503-1505, 1750-1752.) In the alternative, if the Court were to determine that a privilege may apply to the documents and communications, Defendants ask for an order requiring Pfizer to produce such documents and communications for *in camera* review by this Court to determine which documents and communications, if any, may be withheld from production. This motion is filed pursuant to the Court Orders dated December 19, 2022 (ECF 85) and December 28, 2022 (ECF 91).

**PRELIMINARY STATEMENT**

This case represents an unvarnished effort by pharmaceutical giant Pfizer to crush a promising new startup founded in part by two of its former employees, both of whom dedicated decades of service to Pfizer. Over the years, Dr. Qiu and Dr. Zhong endured numerous corporate reorganizations, mergers, and rounds of layoffs. As managers, they were put in the unenviable position of having to preside over layoffs, and to execute decisions to abandon innovative lines of research. They were deeply dedicated to their jobs and relocated their families across the country multiple times as Pfizer changed course and reallocated its vast resources. After a particularly devastating round of layoffs in December of 2017, Dr. Qiu and Dr. Zhong departed Pfizer and founded the biotechnology firm that would become QILU Regor Therapeutics Inc. ("QILU Regor") in July of 2018. Four years later, without a word of warning—and immediately after QILU Regor announced a massive new partnership with Eli Lilly that marked the culmination of years of independent research and development effort—Pfizer brought this action on February 2, 2022, claiming that Defendants' success was the product of trade secret misappropriation, breaches of contract, breaches of fiduciary duty, and unfair competition. (Compl. ¶¶ 85-155.)

It is now clear that filing this litigation is not the only roadblock that Pfizer has constructed to impede QILU Regor's progress. Pfizer's privilege log makes clear that it also attempted to interest the Federal Bureau of Investigation in the allegations set forth in the Complaint, in the hopes of stoking an inquiry into QILU Regor. In particular, Pfizer shared the findings of its pre-suit forensic investigation with the FBI, including materials that Pfizer claims to be proof of Defendants' liability but still remains privileged and which Pfizer has no obligation to produce in discovery. These positions collapse under the weight of their own inconsistencies, because:

*First*, by relying on the material Pfizer shared with the FBI in its Complaint, Pfizer has at a minimum waived privilege over the investigation materials referenced to support its claims;

2

***Second***, it is black letter law that parties waive privilege when sharing privileged communications and attorney work-product with government regulators;

***Third***, the narrow "common-interest" exception invoked by Pfizer to protect its communications with law enforcement only applies where the disclosing party and the government are conducting parallel investigations into the same topic (as when, for example, an independent audit committee and the Securities and Exchange Commission look into accounting irregularities). Pfizer's investigation of Dr. Qiu and Dr. Zhong, undertaken of Pfizer's own volition and later shared in full with the FBI—which was not investigating Pfizer nor Regor prior to those communications—is a wholly different animal, and has nothing to do with any newly-imagined "common interest" that Pfizer claims to share with the FBI.

***Lastly***, even if some of the material Pfizer shared with the FBI was attorney work product, Pfizer's refusal to produce any other direct evidence or testimony as to its claims that Dr. Qiu and Dr. Zhong [redacted] satisfies the "substantial need" exception to the normal attorney work product rules. The Regor Parties must understand the evidence on which Pfizer's misappropriation claims rest in order to litigate the core issues in this case and clear their names.

For all these reasons, and those set forth below, the Regor Parties' motion to compel the production of documents should be granted.

## STATEMENT OF FACTS

**A.    Pfizer Refuses to Produce Documents Relevant to its Forensic Investigation.**

Pfizer's claims hang in large part on its "investigation of Defendants' conduct—which included forensic analysis of various Pfizer repositories, including Dr. Zhong's and Dr. Qiu's company-issued laptops and work email accounts—[and which] revealed that Defendants used many devices and accounts to carry out their scheme." (Compl. at ¶ 39; *see also id.* ¶ 6 (referencing

Pfizer's "forensic analysis of [Drs. Zhong and Qiu's] Pfizer accounts and devices"); *id.* at ¶¶ 51, 53, 70, 91, and 105.)

Accordingly, on April 5, 2022, Defendants asked Pfizer to produce "all documents relating to any forensic investigations of the employees or the employees' computer or devices" (Ex. B, The Regor Parties' First Set of Requests for Production of Documents to Pfizer, No. 23), as well as "[a]ll [d]ocuments and [c]ommunications that Pfizer relied on, reviewed, or referenced in preparing the [c]omplaint . . . ." (*Id.* No. 43; *see also id.* Nos. 21 & 34.) Pfizer refused to respond to these investigation-related discovery requests, claiming the information sought was "protected by the attorney-client privilege, work-product immunity, common-interest privilege, and/or any other applicable exception or privilege." (Ex. C, Pfizer's Responses and Objections to Defendants' First Set of Requests for Production of Documents to Pfizer Inc. No. 23.)

B. **Pfizer Withholds Its Communications with the FBI.**

In November 2022, Pfizer produced its privilege log, which made clear that the Pfizer personnel who conducted the investigation into the Defendants had subsequently contacted the FBI in the hope of ▮▮▮▮▮▮▮▮▮▮ related to the allegations in the Complaint. In particular, Pfizer logged certain communications with the FBI on the purported basis of privilege arising from alleged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A, Pfizer's Amended Privilege Log at entry nos. 526-531, 1135, 1137, 1140, 1144, 1473, 1477, 1479, 1481-1485, 1487-1489, 1491-1495, 1499-1501, 1503-1505, 1750-1752.) This includes correspondence to or authored by FBI employees. (*Id.* at entry nos. 526-531, 1135, 1137, 1140, 1144, 1473, 1477, 1479, 1481-1485, 1487-1489, 1491-1495, 1499-1501, 1503-1505, 1750-1751.) According to its privilege log, Pfizer

4

first communicated directly with the FBI on July 20, 2020 (*id.* at entry no. 526), more than 19 months before Pfizer filed this lawsuit.

On December 8, 2022, Defendants asked Pfizer to clarify its privilege claim with respect to its communications with the FBI. (Ex. D, Dec. 8, 2022 Letter from A. Zuckerman at 2 ("It is unclear precisely what privilege Pfizer is claiming over these documents or what 'criminal investigations' Pfizer is referring to.").) Defendants' December 8 letter explained that: (i) Pfizer could not rely on its investigation in its Complaint and then refuse to disclose the facts uncovered in that investigation; (ii) Pfizer's disclosure of such facts to the FBI waived any potential claim of privilege; and (iii) any criminal investigation into the Regor Parties was irrelevant to the discoverability of the information.

During the December 15, 2022 meet and confer, Pfizer claimed it was withholding its communications with the FBI based on a common interest that the Bureau shared with Pfizer to investigate suspected trade secret misappropriation. The next day, Pfizer added that it was also "asserting privilege over documents that relate to a criminal investigation because those documents were prepared by or at the direction of counsel in anticipation of litigation." (Ex. E, Dec. 16, 2022 Letter from J. Park at 2.)

On December 19, the parties presented this issue to Judge Meyer. The Defendants informed Judge Meyer that Pfizer "is refusing to produce asserting either attorney/client privilege or attorney work product protection," that "there was no ongoing investigation for which Pfizer was cooperating," and "[t]he FBI had at most indicated an interest in learning more at that point or had maybe initiated an investigation without making any indication that it agreed that any action was taken or should be taken." (Ex. F, Dec. 19, 2022 Hr'g Tr. at 9:1-4; 9:24-10:10.) Pfizer again invoked its common interest with the FBI as grounds for not producing the information, without

providing any facts to support its claims that the FBI is actually investigating the Regor Parties, or that any other agency is bringing charges against them. (*Id.* at 11:11-14:13.) The only facts that Pfizer put forth in support of its claim that the FBI had any interest in the Regor Parties were "a [2015] public relations campaign to try to encourage companies to come forward and share information [about trade secret misappropriation]," and a "a low budget movie about a particularly notable theft of trade secrets." (*Id*. at 12:22-13:6.) Judge Meyer referred this dispute to Magistrate Judge Farrish. (ECF 85.)

      **C.    Pfizer's Witness Designated on the Investigation Spoke to the FBI but Refused to Provide the Same Information to the Defendants.**

On December 20, 2022, the Regor Parties deposed Pfizer's Senior Director of Digital Forensics and Insider Threat and Awareness, Mr. Brian Coleman. Pfizer designated Mr. Coleman as its corporate representative on topics including "[t]he Regor Parties' alleged misappropriation of the Trade Secrets and Confidential Information" and "Pfizer's investigation of any alleged misconduct by the Regor Parties, including the forensic investigation referenced in Pfizer's Complaint." (Ex. G, Qilu Regor's Notice of 30(b)(6) Deposition to Pfizer Topic Nos. 7, 10). Prior to designating him as a 30(b)(6) witness, Pfizer had also identified Mr. Coleman ███████ ███████████████████████████████████████████████ ██████████████████████████████████████ (Ex. H, Pfizer's Responses and Objections to the Regor Parties' First Set of Interrogatories No. 8.)

Despite being Pfizer's designated witness on information about Pfizer's forensic investigation, Mr. Coleman shed no further light on the subject during his deposition on December 20, 2022. Mr. Coleman admitted that Pfizer had shared with the FBI what it refuses to give Defendants in discovery: the facts uncovered during the investigation which underlie Pfizer's allegations of misappropriation. (Ex. I, B. Coleman Dep. Tr. at 221:11-17 (████████

6

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████; *id.* at 230:21-25 (██████████████████████████████

████████████████████████████).) But Mr. Coleman refused to provide the same specifics to the Regor Parties, on privilege grounds. (Ex. I, B. Coleman Dep. Tr. at 231:2-17 (█████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████; *id.* at 235:25-236:4 (████████████████████

██████████████████████████████████████████████████████████████

████.)

Likewise, Mr. Coleman refused to provide further details about the Defendants' purported ████████████████████████████████████████████████, even though he and his colleagues have shared that information with the FBI. Specifically, Mr. Coleman stood firm in his belief that any specific facts learned in the course of the investigation are subject to attorney-client privilege. (*See id.* at 216:24-217:6 (██████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████); *id.* at 226:14-21 (████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████; *id.* at 235:25-236:4 (██████████████

██████████████████████████████████████████████████████████████

███████████████████████).) Even so, Mr. Coleman's testimony reaffirmed what has been clear since the Complaint was filed: Pfizer's allegations depend on facts that it uncovered in its forensic investigation and later disclosed to the FBI.

Nor did Mr. Coleman cooperate when prompted to testify as to the plain facts ███████ ████████████████████████████ (*See id.* at 221:21-223:1 (████████ ███████ Rather, Mr. Coleman impermissibly and consistently declined to reveal even the most basic facts of what he found on Dr. Qiu's and Dr. Zhong's Pfizer-issued devices–even though the record is clear that he freely provided this information to the FBI. (*Id.* at 226:22-227:8 (██████ ███████████████████████████████████████████████.) Thus, despite Pfizer designating Mr. Coleman on the topics relating to the Regor Parties' alleged misappropriation and Pfizer's resulting forensic investigation, the Regor Parties still know very little about how Pfizer came to conclude that Drs. Qiu and Zhong engaged in misconduct.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 26(b)(1) allows "[p]arties [to] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Strike 3 Holdings, LLC v. Doe*, 2019 U.S. Dist. LEXIS 79266, at *6-7 (D. Conn. May 10, 2019). Parties may assert the attorney-client privilege to prevent discovery into certain relevant material if such documents and information include "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). "Even in the absence of a valid privilege, communications between an attorney and his client prepared in anticipation of litigation may nonetheless be protected from disclosure by the work product doctrine." *Helt v. Metro. Dist. Com.*, 113 F.R.D. 7, 11 (D. Conn. 1986). However, documents prepared in anticipation of litigation are

discoverable "upon a showing of 'substantial need' for the materials and [the requesting] party's inability, without 'undue hardship,' to obtain their substantial equivalent by other means." *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390 (S.D.N.Y. 2016); *see also* Fed. R. Civ. R. 26(b)(3)(A).

Rule 37(a)(1) states "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). After these steps have been completed, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . a party fails to . . . respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

As set forth in this motion, Pfizer is withholding relevant and responsive documents, relying on improper privilege assertions. Despite efforts through traditional discovery and other avenues, Defendants are unable to challenge certain allegations in Pfizer's Complaint because Pfizer continues to withhold discovery relating to the facts behind those allegations.

**ARGUMENT**

There is no dispute that the facts Pfizer shared with the FBI about its forensic investigation are relevant to the claims and defenses in this action. The only question for this Court to decide is whether Pfizer may resist discovery into its investigation of the Defendants in this case, especially since Pfizer is relying on that investigation in its Complaint and has shared the details with third parties.

I.     **PFIZER CANNOT ASSERT PRIVILEGE OVER THE FACTS THAT FORM THE BASIS OF ITS ALLEGATIONS.**

By expressly relying on and citing its forensic investigation and related findings into the alleged theft of trade secrets by Defendants in this litigation, including in its pleadings (*see, e.g.,* Compl. at ¶¶ 39, 73), Pfizer has waived any claim of privilege it could have maintained as to that investigation. *See, e.g.*, *Angelone v. Xerox Corp.*, 2011 U.S. Dist. LEXIS 109407 (W.D.N.Y. Sep. 26, 2011) (finding that party who relied upon supposedly-privileged documents to assert claims cannot then rely upon privilege protections to shield the same documents from discovery); *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *18 (E.D.N.Y. Mar. 31, 2017) (compelling plaintiffs to produce nine interview memoranda compiled in the pre-complaint investigation, where plaintiffs disclosed five other interview memoranda from the same investigation).

Pfizer claims "Pfizer is not relying on those privileged documents." (Ex. E, Dec. 16, 2022 Letter from J. Park at 1). But the record shows that Pfizer relies on this evidence in asserting its claims in this case. In the Complaint, Pfizer stated that it conducted a "forensic analysis of various Pfizer repositories, including Drs. Zhong's and Qiu's company-issued laptops and work email accounts," (Compl. at ¶ 39), which formed the bases of its misappropriation of trade secrets claims (*id.* at ¶¶ 91, 105), which was the same information that Pfizer provided to the FBI. (Ex. I, B. Coleman Dep. Tr. at 226:22-227:8 (███████████████████████████████████████████████████████████████████████████████████████████; *id.* at 230:21-25 ("████████████████████████████████████████████████████████████████ Thus, because the forensic investigation that formed the basis of Pfizer's complaint has admittedly been communicated to the FBI and has now formed the basis for its allegations, Pfizer cannot protect its communications with the agency.

10

Pfizer relies on *Perino* in its December 16 letter and claims that it did not waive its privilege over the documents. *Perino v. Edible Arrangements Int'l, Inc.*, 2015 WL 1442737, at *9 (D. Conn. Mar. 27, 2015). The authority that Pfizer cited is inapposite because the party in that case did not rely on the documents at issue. (Ex. E, Dec. 16, 2022 Letter from J. Park at 1-2.) In *Perino v. Edible Arrangements Int'l, Inc.*, the court denied a motion to compel the production of documents "relat[ing] to an external 'forensic audit' . . ." after it determined that the audit was "completely irrelevant to the issues raised in this litigation and that Defendants have no intention of using the audit report in this case." 2015 WL 1442737, at 6-7, *9.

Pfizer's other precedent on this point does not involve an exploratory investigation, either. In *Howard Univ. v. Borders*, 2020 WL 7774347 (S.D.N.Y. Dec. 30, 2020), plaintiff asserted privilege over a "pre-suit investigation directed by the University's in-house counsel," to "collect[] information that would inform Howard University's legal arguments and strategy in the anticipated lawsuit . . . ." *Id.* at *1. Here, Pfizer's communications with the FBI were not part of its pre-suit investigation. Unlike the plaintiff in *Howard University*, Pfizer did not reach out to the FBI for information to "decid[e] whether to file suit against the [Defendants]." *Id.* Instead, Pfizer conducted its own forensic investigation first (Compl. at ¶¶ 6, 39, 51, 53, 70, 91, 105), and then communicated its findings to the FBI.

In sum, Pfizer's argument that its communications with the FBI are privileged must fail because it relied on these communications to form the basis of its claims.

## II.   PFIZER'S COMMUNICATIONS WITH THIRD PARTY GOVERNMENT AGENCIES ARE NOT PRIVILEGED.

Even if Pfizer had not waived its privilege by including facts it learned in the course of its investigation in its Complaint, those facts would still be discoverable in light of the fact that Pfizer communicated those facts to the FBI. Courts have repeatedly found that the attorney-client

11

privilege and work product doctrines are "waived . . . expressly . . . by disclosing privileged materials to a government agency." *See Mount Sinai Hosp.*, 185 F. Supp. 3d at 389-90 (defendant waived privilege over "internal investigation and audit . . . culminating in a written report [that was] later produced to the government"); *see also Angelone*, 2011 WL 4473534, at *3; *In re Leslie Fay Cos. Sec. Litig.*, 152 F.R.D. 42, 44 (S.D.N.Y. 1993) (court need not determine whether Audit Committee Report constitutes work product because the court found that "the Audit Committee waived any work product immunity it may have had when it voluntarily disclosed the Report to the SEC"); *Spanierman Gallery, Profit Sharing Plan v. Merritt*, 2003 WL 22909160 at *3, *5 (S.D.N.Y. Dec. 9, 2003) (defendant waived attorney-client and work-product privileges for documents produced to FBI).

Pfizer claims privilege based on a purportedly ongoing ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ (*See, e.g.*, Ex. A, Pfizer's Amended Privilege Log.) But the mere existence of an investigation—if one even exists in this case (a claim which Pfizer has failed to substantiate)—is not a valid basis to withhold the documents from discovery. *See, e.g., Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *4 (S.D.N.Y. May 23, 2016) ("Put simply, the mere fact that an investigation concerns allegations of misconduct or involve[s] some of the same facts as a later criminal investigation does not come close to demonstrating that documents relating to the investigation are protected by the law enforcement privilege.") (internal quotation marks omitted).

Because Pfizer disclosed these documents to a third party government agency, namely the FBI, the documents are no longer privileged and Defendants' motion to compel should be granted.

### III. PFIZER DOES NOT SHARE A COMMON INTEREST WITH THE FBI.

Pfizer has also failed to substantiate any common interest with the FBI beyond the most general concern for the protection of corporate trade secrets. The FBI is not Pfizer's personal

investigator, and Pfizer has not produced any common interest agreement with the FBI. A party that attempts to stoke a federal investigation by disclosing information to the FBI does not share a common interest with the Bureau. *Spanierman Gallery, Profit Sharing Plan*, 2003 WL 22909160, at *3 (finding privilege was waived by providing materials to the FBI: "The FBI and Merritt did not have a 'joint defense' agreement and did not share a common interest. Presumably, the documents were produced to the FBI in order to obtain its assistance in securing the return of the painting. But, at the time, the FBI was simply agreeing to undertake an investigation. It had not determined that Merritt's position was sound, and that [F]agan or Plaintiff were wrongdoers who should be prosecuted"). Just like in *Spanierman*, "[h]aving voluntarily disclosed attorney-client confidences to a third party, [Pfizer] waived the protection of the attorney-client privilege." *Id.*; *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539, 544 (S.D.N.Y. 2013) ("[E]ven though the government might not be their adversary, the [p]laintiffs' disclosures nonetheless have forfeited any work product protection that might otherwise be applicable."); *see also Mount Sinai Hosp.*, 185 F. Supp. 3d, at 389-90 (defendant waived privilege over "internal investigation and audit . . . culminating in a written report [that was later produced to the government]").

Indeed, the weight of the precedent permitting non-disclosure on the basis of the common-interest privilege arose in situations "where the company is a target of an investigation or has already been named as a defendant in litigation," and an independent audit committee has been empowered to conduct a private investigation parallel to government enforcement proceedings. *In re Weatherford Int'l Sec. Litig.*, 2013 WL 12185082, at *4 (S.D.N.Y. Nov. 19, 2013) (audit committee investigation). Indeed, that was the situation in Pfizer's primary authority, *In re Cardinal Health, Inc. Securities Litigation*, where an audit committee's independent counsel successfully asserted the common interest privilege over materials it exchanged with the SEC on

13

the basis of their "shared . . . common interest in developing legal theories and analyzing information . . . concerning potential financial irregularities" that the Commission was already investigating." 2007 WL 495150, at *9 (S.D.N.Y. Jan. 26, 2007). Here, Pfizer initiated contact with the FBI, and Defendants were not under threat of government enforcement or litigation. Pfizer cannot claim common interest privilege where no ongoing FBI investigation existed.[1]

## IV. THE REGOR PARTIES HAVE ESTABLISHED THEIR NEED TO PENETRATE THE ATTORNEY WORK PRODUCT PROTECTION.

Pfizer also claims that the documents were withheld not because they relate to a criminal investigation, but instead on the basis that "those documents were prepared by or at the direction of counsel in anticipation of litigation." (Ex. E, Dec. 16, 2022 Letter from J. Park at 2.) Even if, somehow, the work product protection survives Pfizer's disclosure of the material to the FBI, the Defendants have a substantial need which allows discovery into documents related to Pfizer's forensic investigation.

A party can demonstrate a substantial need for the disclosure of attorney work-product where the material is either "essential to the party's defense," "crucial to the determination of whether the defendant could be held liable for the acts alleged," or "carries great probative value on contested issues." *Gucci Am, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010) (internal quotation marks omitted) (compelling production of witness interviews and incident reports). Here, there is no dispute that Pfizer designated Mr. Coleman on the contested issue of

---

[1] Under Pfizer's view, the FBI would have a standing common interest with literally every company in the United States that owns trade secrets, whether they were under investigation or not. This cannot be the law, as it would expand the concept of "common interest" beyond any reasonable limits. *Cf., Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*, 2021 WL 5834004, at *8 (N.D. Ill. Dec. 9, 2021) ("[T]he common-interest doctrine does not extend to Document No. 169. If it did, then virtually all communications between entities with common interests would automatically be shielded from discovery, even if not covered by any privilege, and that is not the law."); *Bruno v. Equifax Info. Servs., LLC*, 2019 WL 633454, at *10 (E.D. Cal. Feb. 14, 2019) (common interest does not shield communications from discovery where it is based on "an interest shared by virtually all companies that deal in the exchange of credit information").

misappropriation of sensitive information, as well as its investigation, yet his counsel instructed him not to testify as to those specific facts on privilege grounds. This is a fundamental obstruction of the discovery process that poses prejudice to the Regor Parties.

Pfizer's position as to its waiver of privilege and work product protection is yet another attempt to conceal information from Defendants that is critical to the key issues in dispute. The very fact that Pfizer thought it necessary to share such information with the FBI demonstrates its importance in this case. Thus, Pfizer should be required to supplement its responses to these requests and produce the documents related to its FBI investigation. At the very least, if the Court were to determine that a privilege may apply to the documents and communications Pfizer exchanged with the FBI, the documents and communications should be submitted to this Court for *in camera* review to determine which documents, if any, may be withheld from production.

## **CONCLUSION**

THEREFORE, this Court should grant the Defendants' motion to compel the production of documents and communications by Pfizer, or, in the alternative, review the documents and communications in question on an *in camera* basis to assess Pfizer's claims of privilege and determine what documents, if any, may be withheld from production.

Dated: January 6, 2023

Respectfully submitted,
QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Andrew Berdon*
Andrew Berdon
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
andrewberdon@quinnemanuel.com

Mark Yeh-Kai Tung
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, Suite 5th Fl.
Redwood Shores, CA 94065
marktung@quinnemanuel.com

Dana M. Hrelic
PULLMAN & COMLEY, LLC
90 State House Square
Hartford, CT 06601
dhrelic@pullcom.com

James Shearin
PULLMAN & COMLEY, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601
jtshearin@pullcom.com

*Counsel for REGOR THERAPEUTICS INC., QILU REGOR THERAPEUTICS INC., XIAYANG QIU, MIN ZHONG, and DOES 1-10*