## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PFIZER INC., | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 3:22-cv-0190-JAM |
| | : |
| REGOR THERAPEUTICS INC., QILU REGOR THERAPEUTICS INC., XIAYANG QIU, MIN ZHONG, and DOES 1-10, | : |
| Defendants. | : **PFIZER'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL** |
| REGOR THERAPEUTICS INC., QILU REGOR THERAPEUTICS INC., XIAYANG QIU, and MIN ZHONG, | : |
| Counterclaim Plaintiffs, | : **Oral Argument Requested** |
| v. | : |
| PFIZER INC., | : |
| Counterclaim Defendant. | : |

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................. 2

    A.    Pfizer's Investigation and FBI Collaboration ........................................... 2

    B.    Pfizer and the FBI Share an Interest in Protecting Pfizer's Trade Secrets ............ 4

    C.    Pfizer Produced the Facts Underlying Its Complaint ............................... 5

    D.    Pfizer's Extensive Corporate Testimony About Non-Privileged Facts ................ 7

III. ARGUMENT ...................................................................................................... 8

    A.    Pfizer Did Not Waive Privilege by Putting the Disputed Documents "At Issue" ................................................................................................ 8

    B.    Pfizer Did Not Waive Privilege over Documents Shared with the FBI ............... 10

        1.    The Documents Shared with the FBI are Privileged ................................ 10

        2.    Pfizer and the FBI Shared a Common Legal Interest and were Not Otherwise Adversarial when Pfizer Provided Documents to the FBI ...... 11

    C.    Defendants Have Not Established that They Have a Substantial Need for the Disputed Documents ............................................................................ 15

IV. CONCLUSION .................................................................................................. 16

## TABLE OF AUTHORITIES

PAGE

**Cases**

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
   No. 97-cv-4978, 2002 WL 31385824 (S.D.N.Y. Oct. 21, 2002)...............................................16

*Angelone v. Xerox Corp.*,
   No. 09-cv-6019, 2011 WL 4473534 (W.D.N.Y. Sep. 26, 2011)............................................10

*Costabile v. Cty. of Westchester*,
   254 F.R.D. 160 (S.D.N.Y. 2008) ...........................................................................................13

*E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
   No. 09-cv-58, 2010 WL 1489966 (E.D. Va. Apr. 13, 2010)......................................12, 13, 14

*ECDC Env't, L.C. v. New York Marine & Gen. Ins. Co.*,
   No. 96-cv-6033, 1998 WL 614478 (S.D.N.Y. June 4, 1998)................................................10

*GMA Accessories, Inc. v. HMY Jewelry, Inc.*,
   No. 20-cv-11126, 2021 WL 1885260 (S.D.N.Y. May 11, 2021) ...........................................12

*Gray v. Denny's Corp.*,
   No. 509-cv-746, 2010 WL 11566295 (N.D.N.Y. May 19, 2010) ...........................................16

*In re Cardinal Health Inc. Sec. Lit.*,
   No. C2 04 575 ALM, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007)........................................13

*In re Cnty. of Erie*,
   546 F.3d 222 (2d Cir. 2008) ....................................................................................................9

*In re Grand Jury Subpoena Dated July 6, 2005*,
   510 F.3d 180 (2d Cir. 2007) ..................................................................................................11

*In re Lifetrade Litig.*,
   No. 17-cv-2987-JPO-KHP, 2022 WL 3644357 (S.D.N.Y. Aug. 24, 2022) .....................11, 13

*In re Steinhardt Partners, L.P.*,
   9 F.3d 230 (2d Cir. 1993) ......................................................................................................12

*In re Symbol Techs. Sec. Litig.*,
   No. CV-0503923, 2016 WL 8377036 (E.D.N.Y. Sept. 30, 2016)..........................................13

*In re Symbol Techs., Inc. Sec. Litig.*,
   No. 05-cv-3923, 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017) ............................................10

*In re Terrorist Attacks on Sept. 11, 2001*,
   293 F.R.D. 539 (S.D.N.Y. 2013) ........................................................... 14, 15

*Lavatec Laundry Tech., GmbH v. Lavatec, Inc.*,
   No. 3:13-cv-00056, 2014 WL 1665018 (D. Conn. Apr. 25, 2014) ......................................... 10

*Micillo v. Liddle & Robinson LLP*,
   No. 15-cv-6141 (JMF), 2016 WL 2997507 (S.D.N.Y. May 23, 2016) ................................. 11

*Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*,
   304 F.R.D. 369 (S.D.N.Y. 2015) ............................................................... 9

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
   No. 12-cv-220, 2014 WL 655206 (D. Conn. Feb. 20, 2014).................................. 15

*RMS of Wisconsin, Inc. v. Shea-Kiewit Joint Venture*,
   No. 13-cv-1071, 2015 WL 3618300 (E.D. Wis. June 9, 2015) ................................ 13

*Spanierman Gallery, Profit Sharing Plan v. Merritt*,
   No. 00-cv-5712-LTS-THK, 2003 WL 22909160 (S.D.N.Y. Dec. 9, 2003) .......................... 14

*United States ex rel. Ortiz v. Mount Sinai Hosp.*,
   185 F. Supp. 3d 383 (S.D.N.Y. 2016) ........................................................ 15

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) ............................................................ 10, 11

**Other Authorities**

Fed. Bureau of Inv.,
   *FBI Launches Nationwide Awareness Campaign*, FBI (July 23, 2015),
   *available at*: https://www.fbi.gov/news/stories/economic-espionage ................................ 4, 12

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) ....................................................................... 10, 15

## I.       INTRODUCTION

While still employed at Pfizer in the first half of 2018, Defendants Drs. Xiayang Qiu and Min Zhong undertook clandestine efforts to start a new company intended to compete with Pfizer and stole Pfizer's trade secrets to help them do it.  Unbeknownst to Pfizer at the time, only months after Defendants left Pfizer, they sought patent protection for chemical compounds that were virtually identical to a compound that Pfizer had spent more than a dozen years developing. When Defendants' patent published in 2020, Pfizer was alarmed, to say the least.  Pfizer's in-house and outside counsel soon directed Pfizer's digital forensics team to begin investigating Drs. Qiu and Zhong.  The facts and raw data that the forensic team uncovered, which Pfizer has produced in this litigation, reveal that, on their way out the door, Defendants spent months exfiltrating sensitive Pfizer documents containing trade secrets and other confidential information that were critical to the patent they obtained.

In its Complaint, Pfizer has alleged the factual bases for its claims, which have only grown stronger as discovery progresses.  Nowhere in the Complaint does Pfizer rely on its pre-Complaint investigation or any related communications with the FBI to substantiate its claims.  Nor will Pfizer do so at trial.  Nevertheless, Defendants try to invade the attorney-client and work-product privileges to obtain discovery about Pfizer's attorney-directed pre-Complaint investigation.  The communications and work product related to the investigation remain privileged and Defendants' arguments to the contrary lack merit.

*First*, Pfizer has not put its pre-Complaint investigation "at issue."  Pfizer does not rely on the fact or conduct of its investigation to prove its causes of action.  Pfizer instead relies on the facts outlined in the Complaint and has already produced the documents evidencing those facts.  Like every responsible plaintiff, Pfizer investigated its claims before asserting them, but

such an investigation is a textbook example of work product protected from disclosure. Defendants' contrary argument contradicts settled privilege law.

**Second**, Pfizer did not waive privilege by sharing confidential information about Defendants with the FBI.  Pfizer and the FBI have long collaborated to protect Pfizer's trade secrets, and the FBI has reassured companies like Pfizer that it will safeguard the confidentiality of information shared to facilitate investigation into potential trade-secret misappropriation.  The Second Circuit has held that when government agencies, like the FBI, share a common interest with private parties, the private party does not waive privilege by sharing otherwise privileged or confidential information with the government agency.  Courts have found such a common interest in a variety of cases, including where the government agency was not actively soliciting private parties to provide confidential information to assist it.  The common-interest doctrine should and does cover instances, like this one, where a party shares confidential information, with the understanding that it will be kept confidential, to assist the government.

**Third**, Defendants have no need for the privileged materials because they already have the underlying facts that Pfizer will rely on to prove its case.  Defendants fail to carry their burden to demonstrate good cause that would warrant disclosing Pfizer's pre-Complaint investigation or any related documents and communications disclosed to the FBI.  As a result, Defendants' argument would again undo settled privilege law and effectively open every pre-complaint investigation to discovery.

For these reasons, Pfizer respectfully submits that the motion should be denied.

## II.    STATEMENT OF FACTS

### A.    Pfizer's Investigation and FBI Collaboration

From late 2017 until their departure from Pfizer in June 2018, Defendants Drs. Xiayang Qiu and Min Zhong worked in the shadows to establish a startup to compete with Pfizer.  *See*

ECF No. 1 (Compl.) ¶¶ 40-43, 45, 47-51, 55, 57-62, 75.  They disguised their efforts by using codenames in their Pfizer calendar entries and also met with a large pharmaceutical company in China to secure funding for their startup—all while still employed by Pfizer.  *Id.* ¶¶ 41-42.  Dr. Zhong also exfiltrated Pfizer trade secrets through various means, including by cutting and pasting confidential information from one document to a blank template that lacked the standard Pfizer confidentiality warnings on the original document, by sending sensitive files to his personal email account, and by downloading proprietary materials to an external hard drive.  *See id.* ¶¶ 46, 52-54, 56, 63-71.  In November 2018, just five months after their departure and unbeknownst to Pfizer at the time, Defendants filed a patent application disclosing chemical compounds strikingly similar to one that Pfizer had developed over a dozen years.  *See id.* ¶¶ 38, 77.  Without the trade secrets and confidential information stolen from Pfizer, it would have been impossible for a brand-new startup to develop such compounds in mere months.  *Id.* ¶ 77.

On May 28, 2020, one of Defendants' patent applications published (patent applications are typically kept confidential for about 18 months), which alerted Pfizer for the first time to the possibility that Drs. Qiu and Zhong had misappropriated Pfizer's trade secrets and confidential information.  *Id.* ¶ 79.  On June 16, 2020, at the direction of Pfizer's in-house counsel and in anticipation of likely litigation, Brian Coleman, the Senior Director of Pfizer's Digital Forensics and Investigation Team ("DFIT"), met with several Pfizer employees to initiate an investigation into Drs. Qiu's and Zhong's digital activity.  *See* Ex. 1 (Pfizer's Am. Priv. Log) at Log No. 506; Ex. 2B, (Coleman Dep. Tr. (Dec. 20, 2022)) at 42:17-43:8, 71:1-14, 129:4-10; Ex. 2A, (Coleman Dep. Tr. (Dec. 20, 2022)) at 223:4-224:4.  ██████████████████████████ ██████████████████████████████████.  *See* Defs.' Ex. A (Pfizer's Am. Priv. Log) at Log No. 526.  Pursuant to their common interest in remedying the theft of Pfizer's trade

secrets, Pfizer shared documents and forensic analysis with the FBI to facilitate the FBI's own investigation and further augment Pfizer's investigation.  *See* Defs.' Ex. I, (Coleman Dep. Tr. (Dec. 20, 2022)) at 221:11-17, 227:2-230:25.  After more than a year of working with the FBI, Pfizer filed the present civil lawsuit against Defendants on February 2, 2022.

     **B.**     **Pfizer and the FBI Share an Interest in Protecting Pfizer's Trade Secrets**

     In 2015, the FBI launched a "nationwide awareness campaign" to encourage private companies to share information with the FBI when they uncover evidence of trade-secret theft. *See* Fed. Bureau of Inv., *FBI Launches Nationwide Awareness Campaign*, FBI (July 23, 2015), *available at*: https://www.fbi.gov/news/stories/economic-espionage.  The FBI emphasized that such theft "costs the American economy billions of dollars annually and puts our national security at risk."  *Id.*  The FBI also noted that companies are often "hesitant to reach out for help" when discovering their trade secrets have been stolen and urged victims of trade-secret theft to "[p]roactively report suspicious incidents to the FBI," promising that it would "do all it can to minimize business disruption and safeguard privacy and data during its investigation."  *Id.*  As part of its awareness campaign, the FBI collaborated with the National Counterintelligence and Security Center to release a short film based on an actual case to illustrate "how one U.S. company was targeted by foreign actors and how that company worked with the FBI to resolve the problem and bring the perpetrators to justice."  *Id.*  The FBI explained that it had provided "more than 1,300 in-person briefings . . . to companies and industry leaders over the past year," using the short film as a "training tool."  *Id.*  The FBI also noted that each of its "56 field offices has a strategic partnership coordinator (SPC) whose role is to proactively develop relationships with local companies, trade groups, industry leaders, and others so that if an incident occurs, a liaison has already been established."  *Id.*

The FBI necessarily directed its message to companies like Pfizer, which operates in an industry where protecting intellectual property is paramount.  In fact, in February 2020, before Pfizer ever suspected that Defendants had stolen its trade secrets, the FBI's Philadelphia field office emailed Mr. Coleman ████████████████████████████████████████ ████████████████  Ex. 3, (Email from PH_PSC@FBI.gov to Undisclosed recipients (Feb. 24, 2020)) at -9126.[1]  In the cover email, the FBI's Private Sector Coordinator explained that ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████  *Id.*  As another example, in November 2021, Mr. Coleman and several other Pfizer employees met with the FBI to discuss ████████████████████████████████████████████  Ex. 4, (Email from M. Liu to B. Coleman et al. (Nov. 16, 2021)) at -7854.  Mr. Coleman's agenda for the meeting included ████████████████████████████████████████████████ ████████  *Id.*  These meetings are a common part of Pfizer's working relationship with the FBI. *See, e.g.*, Defs. Ex. I, (Coleman Dep. Tr. (Dec. 20, 2022)) at 230:4-15 (testifying that Pfizer "meet[s] with the FBI on a regular basis to talk about all kinds of cyber security risks").

### C.    Pfizer Produced the Facts Underlying Its Complaint

Pfizer already has produced the documents that it relied upon to support its allegations in the Complaint at the time of filing.  *See* Ex. 5 (Ltr. from J. Park to A. Tschumi (Aug. 19, 2022)) at 5 ("Pfizer confirms that it has searched for and produced the specific documents cited in Pfizer's complaint, and refers Defendants to its productions on June 17, July 8 and 30, and August 15.").  These produced materials include "non-privileged documents showing the

---

[1] Although the email is addressed to "Undisclosed recipients," Mr. Coleman received this email due to his membership on a FBI mailing list.

activity—as identified in the Complaint—on Drs. Qiu's and Zhong's Pfizer-issued devices and accounts."[2]  *Id.* at 2.  For example, Pfizer has produced logs showing uploads, downloads, and other activity on Drs. Qiu's and Zhong's Pfizer-issued Box cloud-storage accounts; file access, recycle bin history, and listings of standard user files on their Pfizer-issued laptops; and activity relating to applications, passwords, wireless networks, and other categories on the Pfizer-issued iPhone that Dr. Zhong returned upon his departure.  *See* Exs. 7 (Dr. Qiu's Box log), 8 (Dr. Zhong's Box log), 9 (Dr. Qiu's laptop log), 10 (Dr. Zhong's laptop log), and 11 (Dr. Zhong's iPhone report).[3]

What Pfizer has not produced is the privileged work-product documents and attorney-client communications associated with its pre-Complaint investigation, a subset of which Pfizer shared with the FBI at its request.  *See* Defs.' Br. at 4 (citing certain entries in Pfizer's Amended Privilege Log).  ***None*** of the allegations in Pfizer's Complaint references or relies on Pfizer's communications with the FBI.  Further, as Pfizer's privilege log described, the documents and communications associated with its pre-Complaint investigation are privileged because they either were communications with counsel or prepared by or at the direction of counsel in anticipation of litigation.  *See, e.g.*, Defs.' Ex. A at Log Nos. 519 ████████████████████████

███████████████████████████████████████████████████

---

[2] Defendants' assertion that Pfizer "refused to respond" to their "investigation-related discovery requests," Defs.' Br. at 4, relies on an irrelevant document request and also incorrectly describes Pfizer's written responses. Defendants' Request for Production No. 23 seeks information regarding "any forensic investigations" of employees ***other than*** Drs. Qiu and Zhong.  Defs.' Ex. C at 25.  This request thus has nothing to do with Pfizer's investigation into Defendants' conduct.  As for Defendants' Requests for Production 21, 34, and 43, Pfizer agreed to conduct a reasonable search for and produce any non-privileged documents responsive to those requests.  Ex. 6 (Pfizer's R&Os to Defs.' 1st RFPs (May 5, 2022)) at 23-24, 39-42, 50-51.

[3] Because Exhibits 7-10 contain thousands of rows reflecting the digital activity of Drs. Qiu and Zhong on Pfizer-owned devices and accounts and Exhibit 11 contains over 50 pages reflecting Dr. Zhong's iPhone report, Pfizer has attached single-page excerpts for the Court's reference.  If the Court wishes to see the logs in their entirety, Pfizer will arrange a file transfer to provide the full files.

███████████████████████████████████, 533 █████████████

███████████████████████████████████████████████████

█████████████.  Pfizer also explained in subsequent correspondence that, contrary to Defendants'

mistaken understanding of the law, "[t]here is no waiver of privilege when information is shared

with a party, including the government, that shares a common interest with the holder of the

privilege."  Defs.' Ex. D (Ltr. from J. Park to A. Zuckerman (Dec. 16, 2022)) at 2.

During the December 19, 2022 teleconference before Judge Meyer, Defendants claimed

that "there was no ongoing investigation for which Pfizer was cooperating" and "[t]he FBI had at

most indicated an interest in learning more at that point or had maybe initiated an investigation

without making any indication that it agreed that any action was taken or should be taken."

Defs.' Ex. F (Dec. 19, 2022 Hr'g Tr.) at 9:24-10:10.  In response, Pfizer explained that "full

alignment or agreement" between a party and the government was unnecessary for a finding of

common interest, and that "[y]ou may be advocating or persuading each other, but as long as you

have a shared interest, the law should and does preclude a finding [of] waiver [in] those

circumstances."  *Id.* at 13:25-14:4.

### D.  Pfizer's Extensive Corporate Testimony About Non-Privileged Facts

On December 20, 2022, Defendants deposed Mr. Coleman, Pfizer's corporate designee

on various topics relating to the investigation into Defendants' conduct.  Mr. Coleman provided

ample testimony on the topics for which he was designated.  For example, he testified on the

significance of the investigation and the team members involved, Ex. 2B, (Coleman Dep. Tr.

(Dec. 20, 2022)) at 22:2-23:19, 34:13-35:16; about the methods of collection for different

sources of data, *id.* at 258:6-262:4; and about the logs showing the digital activity of Drs. Qiu

and Zhong in the months leading up to their departure from Pfizer, *id.* at 262:21-281:15.

Mr. Coleman also testified that the investigation into Defendants' conduct began in June 2020 at the request of Pfizer's in-house counsel. *Id.* at 42:17-43:8, 71:1-14; Ex. 2A, (Coleman Dep. Tr. (Dec. 20, 2022)) at 223:4-224:4. He further testified that the investigation was the sole basis for his belief that Drs. Qiu and Zhong exfiltrated data from Pfizer. Defs.' Ex. I, (Coleman Dep. Tr. (Dec. 20, 2022)) at 225:21-226:17. Mr. Coleman also testified that Pfizer shared documents and forensic analysis with the FBI, and that outside of the investigation, Pfizer "meet[s] with the FBI on a regular basis to talk about all kinds of cyber security risks." *Id.* at 221:11-17, 227:2-8, 230:4-15, 230:21-25. The limited questions that Mr. Coleman did not answer were those that improperly sought discovery into privileged attorney-client communications and work product. For example, when asked about what he "learned during the investigation," Mr. Coleman maintained that he could not answer because of privilege limitations. *Id.* at 226:18-21. Similarly, when asked about what he told the FBI regarding Drs. Qiu and Zhong, Mr. Coleman maintained that he could not answer for this same reason. *Id.* at 231:2-9, 235:25-236:4.

## III.   ARGUMENT

Defendants offer three principal arguments for why they should be entitled to invade Pfizer's privilege and obtain disclosure of those documents and communications that Pfizer shared with the FBI. None has merit.

### A.   Pfizer Did Not Waive Privilege by Putting the Disputed Documents "At Issue"

Defendants are incorrect as a matter of fact and privilege law that Pfizer "waived any claim of privilege" because it relied on the documents relating to its pre-Complaint investigation that were shared with the FBI "to form the basis of its claims." Defs.' Br. at 10-11. An "at issue" subject-matter waiver is a rare remedy that applies when a party "places the attorney-client relationship directly at issue," or "*relies* on the privileged communication as a claim or defense

or as an element of a claim or defense." *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (emphasis in original).  No such circumstances are present here.  Pre-complaint investigations are routine, and even though a plaintiff relies on "the facts gathered during its investigation as proof for its position," that does not put the investigation at issue and waive privilege.  *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369, 374 (S.D.N.Y. 2015) (finding no waiver even when plaintiff attached findings of its investigation to the complaint).  Defendants' argument to the contrary would mean that every plaintiff that investigates facts before filing suit has waived privilege over its investigation if it ends up suing based on what it learns.  This is not the law.

Pfizer has not put its internal investigation or its communications with the FBI at issue in the litigation.  Pfizer already has produced the documents that it relied upon to support its allegations in the Complaint at the time of filing.  *See* Ex. 5 (Ltr. from J. Park to A. Tschumi (Aug. 19, 2022)) at 5.  These produced documents evidence the factual bases on which Pfizer relied to make its allegations in this case, including forensic logs that show Drs. Qiu's and Zhong's misappropriation of Pfizer's trade secrets and their subsequent attempts to cover up their theft.  Pfizer's reliance on facts uncovered in the course of its investigation—which have been produced to Defendants—is not synonymous with reliance on privileged documents or communications created in the course of Pfizer's investigation.  Pfizer is not now relying on, and will not at trial rely on, any privileged documents or communications relating to its investigation, including those shared with the FBI.

Notwithstanding Pfizer's comprehensive document productions, Defendants are now petitioning this Court to gain access to Pfizer's work product based on the notion that protected **documents** are somehow merely **facts** over which Pfizer has asserted privilege.  Defs.' Br. at 9-

10. Although a document may itself contain facts, Pfizer's assessment, curation, and analysis of those facts within the documents reveal its "mental impressions, conclusions, opinions, or legal theories," *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998), and are unambiguously opinion work product; *see also ECDC Env't, L.C. v. New York Marine & Gen. Ins. Co.*, No. 96-cv-6033, 1998 WL 614478, at *16 (S.D.N.Y. June 4, 1998) (noting that "[i]f a document constitutes protected work product, the party possessing the document generally need not produce it—even if the document contains only factual information").[4]

### B.    Pfizer Did Not Waive Privilege over Documents Shared with the FBI

### 1.    The Documents Shared with the FBI are Privileged

The documents Pfizer shared with the FBI—a subset of Pfizer's privileged documents and communications from its pre-Complaint investigation—are quintessential work product prepared in anticipation of litigation.  *See Lavatec Laundry Tech., GmbH v. Lavatec, Inc.*, No. 3:13-cv-00056, 2014 WL 1665018, at *1 (D. Conn. Apr. 25, 2014) (explaining that under the work product doctrine, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]") (quoting Fed. R. Civ. P. 26(b)(3)(A)).  Pfizer's in-house counsel directed Pfizer employees to conduct an investigation into Drs. Qiu and Zhong to uncover the extent to which they misappropriated Pfizer's trade secrets before their departure, and to prepare for

---

[4] Defendants' reliance on *Angelone v. Xerox Corp.*, No. 09-cv-6019, 2011 WL 4473534 (W.D.N.Y. Sep. 26, 2011), is misplaced.  *See* Defs. Br. at 10, 12.  *Angelone* is an employee-discrimination case where the defendant company relied on the adequacy of its investigation to assert the *Faragher-Ellerth* affirmative defense to liability. *See id.* at *3.  No comparable affirmative defense is at issue in this case, nor is there any other reason why the adequacy of Pfizer's investigation would be relevant.  Defendants' reliance on *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-cv-3923, 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017), is similarly inapposite.  In *Symbol Technologies*, the court found implied waiver over privileged memoranda due to the defendant's intentional selective disclosure of some of the privileged memoranda in depositions.  *Id.* at *15-16.  Apart from their conclusory citation to *Symbol Technologies*, Defendants do not argue that Pfizer selectively disclosed its privileged documents.  Nor could they; Pfizer has withheld from disclosure *all* attorney-client privileged and work-product protected documents created by or at the direction of counsel during Pfizer's investigation, including the subset provided to the FBI at issue here.

potential litigation against them.  *See* Ex. 1 (Pfizer's Am. Priv. Log) at Log No. 506; Ex. 2B,

(Coleman Dep. Tr. (Dec. 20, 2022)) at 42:17-43:8, 71:1-14, 129:4-10; Ex. 2A, (Coleman Dep. Tr.

(Dec. 20, 2022)) at 223:4-224:4.  To facilitate Pfizer's ongoing collaboration with the FBI and

both Pfizer's and the FBI's investigation of Defendants, Pfizer also shared documents with the

agency, including Pfizer's forensic analysis and assessment of the results of the investigation.

*See, e.g.*, Defs.' Ex. A at Log No. 1,135; *see also* Defs.' Ex. I, (Coleman Dep. Tr. (Dec. 20,

2022)) at 221:11-17, 227:2-230:25, 231:2-9, 235:25-236:4.  Because those documents

incorporated the "mental impressions, conclusions, opinions, or legal theories" of Pfizer's in-

house or outside counsel, they are unambiguously opinion work product.  *See Adlman*, 134 F.3d

at 1197.  They also are protected fact work product.  *See In re Grand Jury Subpoena Dated July

6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ("[F]act work product may encompass factual material,

including the result of a factual investigation." (citation omitted)).[5]

### 2.    Pfizer and the FBI Shared a Common Legal Interest and were Not Otherwise Adversarial when Pfizer Provided Documents to the FBI

The documents and communications that Pfizer shared with the FBI remain privileged for

at least two reasons.  ***First***, the common-interest doctrine applies to "communications that

otherwise would be protected by the attorney-client or work product doctrine."  *In re Lifetrade

Litig.*, No. 17-cv-2987-JPO-KHP, 2022 WL 3644357, at *4 (S.D.N.Y. Aug. 24, 2022) (citations

omitted).  As to work-product protected communications, the common-interest doctrine applies

where "the third party and the client share a common legal interest and the parties cooperate in

developing a common legal strategy."  *GMA Accessories, Inc. v. HMY Jewelry, Inc.*, No. 20-cv-

---

[5] As Pfizer has explained previously to Defendants, Pfizer is not claiming law-enforcement privilege over the documents it shared with the FBI.  *See* Defs.' Ex. E (Ltr. From J. Park to A. Zuckerman (Dec. 16, 2022)) at 2. Defendants' motion nevertheless cites *Micillo v. Liddle & Robinson LLP*, No. 15-cv-6141 (JMF), 2016 WL 2997507 (S.D.N.Y. May 23, 2016).  Defs.' Br. at 12.  *Micillo* involved a party's assertion of law enforcement privilege, *id.* at *4, and thus is irrelevant to the present dispute.

11126, 2021 WL 1885260, at *1 (S.D.N.Y. May 11, 2021) (internal quotation marks omitted). The Second Circuit has explained that parties who share documents with the government do not waive privilege over those documents when the parties share a "common interest in developing legal theories and analyzing information." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993).

The common interest in protecting trade secrets between a private company and the FBI is one instance in which the doctrine applies. In *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 09-cv-58, 2010 WL 1489966 (E.D. Va. Apr. 13, 2010), plaintiff DuPont discovered that a former employee had stolen DuPont's trade secrets, and it began preparing for litigation against the former employee. *See id.* at *1. DuPont then shared information with the FBI regarding its investigation into the employee. *See id.* at *1-2. The court held that, with one exception, DuPont's privileged work product "was not waived by sharing it with the government, which had a ***common interest with DuPont in preventing trade secret theft***." *Id.* at *9 (emphasis added). The *Du Pont* court, echoing the public statements of the FBI quoted above, *see supra* Section II.B, explained: "[I]t is difficult to see how the government could have conducted its case without DuPont's assistance. And, there is no reason why DuPont, in providing such assistance, should lose work-product protection for information it provided to the government respecting its own plans for litigation against a party implicated in the investigation." *Id.* at *8.

The holding of *Du Pont* applies with even greater force here. The FBI has actively encouraged companies like Pfizer to provide the exact type of information that Pfizer shared with the agency. *See FBI Launches Nationwide Awareness Campaign*, *supra*. And, even before Pfizer suspected Defendants' trade-secret theft, Pfizer and the FBI had closely collaborated on how best to protect Pfizer's intellectual property. *See, e.g.*, Ex. 3, (Email from

PH_PSC@FBI.gov to Undisclosed recipients (Feb. 24, 2020)) at -9126; Defs.' Ex. I, (Coleman

Dep. Tr. (Dec. 20, 2022)) at 230:4-15 (Pfizer "meet[s] with the FBI on a regular basis to talk

about all kinds of cyber security risks.").  Per their longstanding relationship, Pfizer shared

confidential information with the FBI regarding Defendants, with the understanding that the FBI

would collaborate with Pfizer on investigating Defendants further to protect Pfizer's trade secrets.

Pfizer thus shared a common interest with the FBI "in preventing trade secret theft," and "there

is no reason why" Pfizer "should lose work product protection" for the information it provided to

the government.  *Du Pont*, 2010 WL 1489966, at *8-9; *see also, e.g.*, *RMS of Wisconsin, Inc. v.*

*Shea-Kiewit Joint Venture*, No. 13-cv-1071, 2015 WL 3618300, at *2 (E.D. Wis. June 9, 2015)

(finding common interest between plaintiff company and the FBI); *Costabile v. Cty. of*

*Westchester*, 254 F.R.D. 160, 166 (S.D.N.Y. 2008) (finding common interest between individual

plaintiffs and the EEOC); *In re Cardinal Health Inc. Sec. Lit.*, No. C2 04 575 ALM, 2007 WL

495150 (S.D.N.Y. Jan. 26, 2007) (finding common interest between plaintiff company, the U.S.

Attorney's Office, and the SEC); *In re Symbol Techs. Sec. Litig.*, No. CV-0503923, 2016 WL

8377036, at *13-14 (E.D.N.Y. Sept. 30, 2016) (finding common interest between plaintiff

company and the SEC).

     ***Second***, even if Pfizer and the FBI did not share a common interest—which they did—

the work-product doctrine would still apply because they were not otherwise adversarial at the

time of disclosure.  "[W]ork product protection is not waived merely because the material is

disclosed to a third party. . . .  Protection is waived only when work product is disclosed to a

third party in a manner that is inconsistent with the purpose of the protection."  *Lifetrade Litig.*,

2022 WL 3644357, at *3 (explaining that "[d]isclosing work product to actual or anticipated

adversaries in litigation" is an example of disclosure inconsistent with work product protection).

Here, the FBI was not Pfizer's adversary; instead, as explained above, Pfizer and the FBI worked together to protect Pfizer's trade secrets, assisting each other and collaborating to investigate the misappropriation of trade secrets at issue here. *Supra* Section II.B. Pfizer's acts therefore are fully consistent with the purpose underlying the work-product doctrine.

The primary case on which Defendants rely to argue that Pfizer waived work-product protection, *Spanierman Gallery, Profit Sharing Plan v. Merritt*, No. 00-cv-5712-LTS-THK, 2003 WL 22909160 (S.D.N.Y. Dec. 9, 2003), is distinguishable. In *Spanierman Gallery*, the plaintiff had acquired a painting from a third party who, according to the defendant, sold the painting without the defendant's permission. *Id.* at *1. The defendant then reported her "loss of painting" to the FBI, voluntarily produced documents to the FBI, and then never moved to quash the subpoena served on the FBI seeking production of those very same documents. *Id.* When, two years later, the defendant attempted to assert privilege over the documents and communications it provided to the FBI—which the FBI ***already*** had produced to the plaintiff in the civil case—the *Spanierman Gallery* court found a waiver of privilege and work product protection. According to the court, the defendant's only interest in what was fundamentally a private dispute was to "secur[e] the return of the painting" from the plaintiff, which "was not the FBI's interest" because the FBI "had an obligation to perform an objective investigation of [the defendant's] allegations." *Id.* at *5. By contrast, in this case, Pfizer and the FBI have long worked together on how best to protect Pfizer's trade secrets—an objective the FBI has recognized and publicized, including because of its public interest, economic, and national security implications. *See Du Pont*, 2010 WL 1489966 at *9.[6]

---

[6] Defendants' other cases fare no better. *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539 (S.D.N.Y. 2013) concerned whether the plaintiffs waived privilege over FOIA requests sent to the government. The court held that the plaintiff had waived privilege over the FOIA requests because the very act of submitting a FOIA (….continued)

### C.     Defendants Have Not Established that They Have a Substantial Need for the Disputed Documents

Defendants also fail to demonstrate that Pfizer should be compelled to disclose its work-product communications shared with the FBI.  Defendants claim to have a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 12-cv-220, 2014 WL 655206, at *5 (D. Conn. Feb. 20, 2014) (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)).  But this is not so.  Defendants seek "documents related to Pfizer's forensic investigation" or the "specific facts" relating to Defendants' "misappropriation of sensitive information."  Defs.' Br. at 14-15.  Defendants ignore, however, that Pfizer already has produced the documents that it relied upon to support its allegations in the Complaint at the time of filing.  *See, e.g.*, Ex. 5 (Ltr. from J. Park to A. Tschumi (Aug. 19, 2022)) at 5.  As noted, those produced materials include logs showing the digital activity on Drs. Qiu's and Zhong's Pfizer-issued accounts and devices, which form the "specific facts" underlying Pfizer's forensic investigation and Pfizer's allegations regarding Defendants' trade-secret misappropriation.  *See* Exs. 7 (Dr. Qiu's Box log), 8 (Dr. Zhong's Box log), 9 (Dr. Qiu's laptop log), 10 (Dr. Zhong's laptop log), and 11 (Dr. Zhong's iPhone report).  Pfizer will not rely on any pre-Complaint investigation or analysis to prove Defendants' misappropriation; instead, Pfizer will provide expert forensic testimony at the appropriate time.

Because Defendants already possess the facts they seek, Defendants lack ***any*** need for Pfizer's privileged documents, much less a substantial need.  *See Gray v. Denny's Corp.*, No.

(continued….)

request makes it publicly available.  *Id.* at 544.  And in *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383 (S.D.N.Y. 2016), there was no dispute that defendant expressly waived privilege over materials shared with the government; instead, the dispute was over the scope of that waiver.  *See id.* at 391.

509-cv-746, 2010 WL 11566295, at *4 (N.D.N.Y. May 19, 2010) (finding no substantial need where plaintiff failed to show why the factual information could not be obtained "from the discovery already provided or from future discovery or investigation"); *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97-cv-4978, 2002 WL 31385824, at *7 (S.D.N.Y. Oct. 21, 2002), *supplemented* 2002 WL 31556382 (S.D.N.Y. Nov. 15, 2002) (finding no substantial need where plaintiffs "offered no evidence whatsoever establishing that the information is not available to them from other sources").[7]

## IV.   CONCLUSION

For the foregoing reasons, Pfizer respectfully submits that Defendants' motion to compel the production of Pfizer's privileged documents should be denied in its entirety.

---

[7] For these same reasons, there is no merit to Defendants' request for "in camera" review of Pfizer's protected documents and communications to determine which should be withheld.  Defs.' Br. at 15.

Dated: January 17, 2023

Respectfully submitted,

/s/ Dana M. Seshens

Ashok Ramani (*pro hac vice*)
Gareth E. DeWalt (*pro hac vice*)
James Y. Park (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025
Tel:    (650) 752-2000
ashok.ramani@davispolk.com
gareth.dewalt@davispolk.com
james.park@davispolk.com

Dana M. Seshens (*pro hac vice*)
Matthew Cormack (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel:    (212) 450-4000
dana.seshens@davispolk.com
matthew.cormack@davispolk.com

James I. Glasser (ct07221)
Jenny R. Chou (ct28201)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street, P.O. Box 1832
New Haven, CT 06508
Tel:    (203) 498-4313
jglasser@wiggin.com
jchou@wiggin.com

*Counsel for Plaintiff and Counterclaim Defendant Pfizer Inc.*