# EXHIBIT 5

**Davis Polk**

James Y. Park
+1 650 752 2044
james.park@davispolk.com

Davis Polk & Wardwell LLP
1600 El Camino Real
Menlo Park, CA 94025
davispolk.com

August 19, 2022

Re: *Pfizer Inc. v. Regor Therapeutics Inc., et al.*, C.A. No. 3:22-cv-190-JAM (D. Conn.)

Alexandre Tschumi
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave, 22nd Floor
New York, New York 10010-1601

Dear Alexandre:

We write on behalf of Plaintiff Pfizer Inc. ("Pfizer") in response to Defendants' letter dated July 28, 2022 regarding Defendants' proposed revisions to Pfizer's proposed custodians and ESI search terms.

As an initial matter, Defendants' suggestion that Pfizer failed to provide hit reports is puzzling. Hit reports for Pfizer's search protocol have largely been unnecessary because Pfizer has generally agreed to Defendants' requested searches. As a result, Pfizer has reviewed or is in the process of reviewing nearly 400,000 documents, and has already produced nearly 70,000 documents to date—almost ***nine*** times as many documents as Defendants have produced. For example, in its previous letter, Pfizer agreed to run the vast majority of Defendants' requested additional terms. Pfizer only objected to nine terms, four on relevance grounds. As to the remaining five terms, Pfizer did indeed provide hit counts to establish that review of the resulting documents would be unduly burdensome.

Thus, with approximately five weeks remaining before the deadline for substantial completion of document production, Pfizer has already more than fulfilled its discovery obligations in this case. Nevertheless, in the interest of reaching a reasonable accommodation, Pfizer will consider certain limited additions to its already robust search protocol. Pfizer addresses each issue raised by Defendants in turn.

### *Request for Additional Custodians*

Defendants criticize Pfizer for not agreeing to add a multitude of unnecessary custodians, beyond the ten custodians to which it has already agreed. At the outset of discovery in this case, Pfizer proactively determined the custodians that are best situated to provide relevant, non-duplicative discovery. Pfizer then acceded to the vast majority of Defendants' search-term requests, began review of hundreds of thousands of documents, and has already produced nearly 70,000 documents. Even beyond that, Pfizer agreed to several more custodians and more search terms after negotiations with Defendants. Any insinuation that Pfizer has not cooperated fully in the discovery process is misplaced.

  *Brian Coleman*

Contrary to Defendants' assertions, Pfizer has not "obstruct[ed]" collection of documents from Mr. Coleman in any way. Pfizer has always maintained that it would manually collect documents from Mr. Coleman. Defendants also complain that "Pfizer refuses to run search strings relating to (1) the purported trade secrets and confidential information specifically at issue in this case or (2) Dr. Qiu's and Dr. M. Zhong's compliance with Pfizer's security measures." This complaint ignores that Pfizer has already agreed to run the following broad search terms on Mr. Coleman's ESI:

- Min w/2 Zhong

**Davis Polk**  Alexandre Tschumi

- Xiayang w/2 Qiu
- Regor
- QL
- Qilu
- (D360 OR offboard*) AND ("Qiu" OR "*Xiayang*" or "Qui" or "XQ" OR "Zhong" OR "Min")

Given the breadth of these terms, which will capture every document in Mr. Coleman's ESI that mentions the defendants by name, Pfizer expects to produce numerous documents relating to both of the requested categories.

Defendants' complaint also ignores that Pfizer has already manually collected and produced the non-privileged documents showing the activity—as identified in the complaint—on Drs. Qiu's and Zhong's Pfizer-issued devices and accounts, which pertain to the Pfizer information misappropriated in this case. Pfizer refers Defendants to its July 30 and August 15 productions.  In addition, Pfizer has already manually collected and produced Pfizer's policies and procedures regarding its protection of trade secrets, including from Mr. Coleman.  Pfizer refers Defendants to its June 3, 17, and July 30 productions and its supplemental responses to Defendants' interrogatories served on August 10.  In light of the foregoing ESI search terms and manual productions, running any additional search strings is duplicative and unnecessary.  If, upon reviewing Pfizer's forthcoming production from Mr. Coleman's ESI, Defendants have reason to believe that Pfizer's searches were deficient, please let us know and we will consider it.

Lastly, as we have explained previously, Mr. Coleman and his team undertook their investigation at the direction of counsel and interacted with counsel extensively in connection with the investigation.  Pfizer therefore will produce and/or withhold documents from Mr. Coleman's ESI as appropriate to ensure protection of Pfizer's attorney-client and work-product privileges.

*Dennis Scott*

Defendants again request documents from Mr. Scott, notwithstanding his very short time in the role of Dr. M. Zhong's supervisor.  Nevertheless, in the interest of compromise, Pfizer will add Mr. Scott as an ESI custodian and search Mr. Scott's documents with the same search terms that it has agreed to run across the custodial files of the other Pfizer scientists for the time period of 12/1/2017 to 1/31/2018.

*Bei Zhang*

As Pfizer has explained previously, there is no basis to add Dr. Zhang as an ESI custodian because (1) Dr. Zhang's past work experience is irrelevant to this action, and, (2) to the extent Dr. Zhang was involved in the GLP-1 program (on however a limited and indirect basis that may be), her documents are duplicative of documents collected from other custodians.  Defendants' letter confuses these two issues.

Defendants claim that "the searches and categories of documents that we are seeking with respect to Dr. Zhang is not duplicative of other Pfizer custodians given her unique prior work experience and hiring by Pfizer."  But Pfizer did not contend that Dr. Zhang's documents, in this respect, are duplicative.  Rather, as Pfizer has explained repeatedly, Dr. Zhang's prior work experience and hiring by Pfizer is irrelevant to this action.  Defendants have repeatedly sought discovery about Pfizer's hiring of other employees, but continue to fail to articulate why this information is relevant.  The only authority Defendants have provided is related to industry custom and practice in the context of interpreting contractual clauses and particular statutory defenses, neither of which is applicable here.

As for Dr. Zhang's minor involvement in Pfizer's GLP-1 program, Pfizer reiterates that Dr. Zhang did not join Pfizer until mid-2017 and served in a leadership role for CVMED, a large department that covers numerous programs, including the GLP-1 program.  Dr. Zhang has not contributed any research to Pfizer's GLP-1 program and has not performed any clinical trial work for the program.  Again, to the extent she was involved in the GLP-1 program, her documents would be duplicative of documents collected from other custodians.  If, upon reviewing Pfizer's productions, Defendants have reason to believe that Dr. Zhang would have unique, responsive materials, please let us know and we will consider it.

**Davis Polk**　　Alexandre Tschumi

*IT Professionals*

Pfizer objects to Defendants' request insofar as it purports to request that Pfizer search the files of **all** of its IT professionals for interactions for which Defendants have supplied only minimal information. Such a request is overly broad and unduly burdensome. Pfizer maintains that any relevant offboarding documents would already have been produced or will be produced from Drs. Qiu's and Zhong's files pursuant to Pfizer's search protocol.

Nevertheless, Pfizer has again run broad searches over Dr. Qiu's and Dr. M. Zhong's custodial files and has not identified any IT professionals with first names of "Greg" or "James" who assisted in Dr. Qiu and Dr. Zhong's departure from Pfizer. Pfizer did, however, find a small number of emails between Dr. Qiu and an IT professional named "Gregg Giwoyna." In the interest of compromise, Pfizer will produce any communications between Mr. Giwoyna and Drs. Qiu or Zhong.

*Molly Handal and John O'Neill*

Pfizer identified Ms. Handal and Mr. O'Neill in response to Defendants' Interrogatory No. 7 as persons with knowledge about the value of certain Pfizer confidential information, including market research for Pfizer's Bosulif and Ibrance drugs; market projections for those and other oncology drugs; research regarding CDK4/6 inhibitors; and a mouse study involving Pfizer's Bosulif drug. The oncology-related information of which Pfizer is aware that Defendants misappropriated largely consists of sensitive market research, the value of which is not likely reflected in emails. Thus, although Pfizer expects to manually collect relevant documents related to the value of this information from Ms. Handal and Mr. O'Neill, Pfizer is continuing to investigate how to perform that collection.

ESI search terms are inappropriate for Ms. Handal and Mr. O'Neill, as neither individual has contemporaneous knowledge of the events alleged in Pfizer's complaint. Moreover, each individual's relevant role is extremely narrow, as they work on business analytics for Pfizer's oncology programs. As such, Pfizer believes that Ms. Handal's and Mr. O'Neill's ESI are highly unlikely to contain unique documents responsive to Defendants' requests.

**Demand for Entire Email Inbox Production**

Defendants' demand for the entire inboxes of Drs. Qiu and M. Zhong is simply at odds with fundamental requirement that discovery be "relevant to any party's claim or defense and proportional to the needs of the case." FRCP 26(b)(1). By definition, the request for an entire inbox is not tailored to seek relevant documents. *See e.g.*, *Frazier v. Morgan Stanley & Co., LLC*, No. 16-cv-804-RJS, 2021 WL 2709250, at *1-2 (S.D.N.Y. July 1, 2021) (finding search of email inboxes with search terms sufficient and the request to produce entire email inboxes overly broad and unduly burdensome). Your most recent letter simply states that you have repeatedly explained the relevance of this request, but your explanation remains a non sequitur. The fact that a forensic investigation of certain accounts uncovered certain activity by the individual defendants does not entitle them to the entire email accounts from their time at Pfizer. If this position were correct, any time that an employer discovered evidence of wrongdoing by an employee in their inbox, it would be required to turn over that employee's entire inbox. That is not the law and Defendants have not cited a single case where this argument was accepted. Defendants' request is, therefore, facially improper.

The discussion of the burden associated with Defendants' request is a secondary question because even if there was minimal burden, discovery must be tailored to the relevant topics at issue in the case. In any event, Pfizer explained that production of Drs. Qiu and M. Zhong's **entire** email inboxes implicates hundreds of thousands of documents. Even if the date range was narrowed to 1/1/2018 to 6/12/2018, that would still implicate over 90,000 documents—many of which are confidential or contain trade secrets and some of which may be privileged.

**Davis Polk**   Alexandre Tschumi

Pfizer has already produced over 30,000 documents from Dr. Qiu and Dr. M. Zhong's ESI repositories using broad search terms. Whether for the duration of employment or for a period of half a year, requesting the entirety of an email inbox or cloud account is not reasonably designed to collect relevant documents and will be unduly burdensome to review.

*Manual Document Searches*

Defendants ask Pfizer to confirm a laundry list of searches to which Pfizer already has agreed in its response to Defendants' document requests. Nevertheless, in the interest of compromise, Pfizer provides more detail as follows.

Pursuant to a reasonable search, Pfizer will manually collect documents responsive to the following categories:

- Policies that applied to Dr. Qiu and/or Dr. M. Zhong as employees of Pfizer and documents showing receipt, acknowledgment, and/or agreement;
- Documents showing Pfizer's use of data monitoring software;
- Documents showing the value of Pfizer's alleged trade secrets and confidential information, including documents demonstrating their economic value and all costs and expenses to develop them;
- Documents concerning Pfizer's projected or annual budgets, sales, revenues, and profit from products (whether final or in development) which incorporate the alleged trade secrets or confidential information;
- Documents concerning efforts by Pfizer to license or sell the alleged trade secrets or confidential information;
- Documents showing Pfizer's policies and procedures for licensing intellectual property; and
- Documents showing Pfizer research programs that Dr. Qiu and/or Dr. M. Zhong supervised as Pfizer directors, including their supervisory roles.

Pursuant to a reasonable search, Documents responsive to the following categories will be produced through the use of search terms:

- Documents showing Pfizer's progress in its GLP-1 program;
- Documents relating to Pfizer's second candidate oral small-molecule GLP-1 receptor agonist in clinical trials (Compl. ¶¶ 24, 26);
- Documents showing the assays used by Pfizer for testing GLP-1 drug candidates;
- Documents showing the structure activity relationship (SAR) cycle time in Pfizer's testing of GLP-1 drug candidates; and
- Documents relating to Pfizer's allegations that, around 2017, Dr. Qiu and Dr. M. Zhong, had each begun to indicate to their respective colleagues that they were dissatisfied or disgruntled at Pfizer, that Dr. Qiu "grumbled that he saw no suitable opportunities for advancement within the Company," and that Dr. M. Zhong was removed from his group's leadership team, about which he complained (Compl. ¶ 40).

The following request does not appear to correspond to any of Defendants' requests for production. In any event, pursuant to a reasonable search, documents responsive to this request will be produced pursuant to Pfizer's search protocol for its ESI custodians:

- Documents relating to Pfizer's work with "colleagues outside of the [Pfizer] lab," "work[] with external researchers and organizations on the GLP-1 project," "agreement for biochemical and biophysical work on the GLP-1 receptor with a leading research institute," "collaborati[on] with another research company to develop a high-resolution structure showing the interactions between

**Davis Polk**    Alexandre Tschumi

Pfizer's small-molecule compounds and the GLP-1 receptor," and "work[] with partners to conduct preclinical and clinical studies, such as toxicology studies, on [Pfizer's] compounds" (Compl. ¶ 22).

Pursuant to a reasonable search, documents responsive to the following request have been produced and/or will be produced:

- Documents showing any measures taken by Pfizer to maintain or protect the alleged secrecy or confidentiality of any alleged trade secret or confidential information.

For the following request, Pfizer reiterates its response to RFP No. 43, as set forth in Pfizer's August 12 letter.  Pfizer confirms that it has searched for and produced the specific documents cited in Pfizer's complaint, and refers Defendants to its productions on June 17, July 8 and 30, and August 15.

- Documents that Pfizer relied on, reviewed, or referenced in preparing its Complaint.

For the following request, Pfizer reiterates its response to RFP No. 62 and confirms that Pfizer will produce documents produced to Pfizer by a third party in connection with this action, to the extent such documents exist:

- Documents produced to Pfizer by a third party in connection with this Action.

*Search Terms*

This case principally concerns Dr. Qiu and M. Zhong's misappropriation of Pfizer confidential information and trade secrets in 2018 and their founding of a competing venture while still employed by Pfizer.  Certain of the trade secrets stolen by Defendants relate to Pfizer's GLP-1 program, but that does not put at issue the entirety of the program.  For example, Defendants are not entitled to documents relating to the many years of research and development underlying Pfizer's GLP-1 program, unless those documents concern the trade secrets at issue.  But those are precisely the types of documents that would be picked up in broad searches such as (GLP OR GLP-1 OR GLP1 OR GLP-1R OR GLP1R OR "glucagon-like peptide-1") that Defendants request that Pfizer run.  Pfizer's search protocol will already result in Pfizer producing tens of thousands of documents about its GLP-1 program, and Pfizer will not run the broad GLP-1-related search, which would result in Pfizer reviewing an additional 160,000 unique documents of limited to no relevance to this litigation.[1]

Regarding the search string, (protect* OR secur* OR restrict*) w/5 ("trade secret" OR confidential* OR "need to know"), Pfizer objects that it will not result in the production of any relevant, non-duplicative information.  Defendants have asserted that this search string is relevant because it is relevant to "whether such security policies were actually followed with respect to the specific trade secrets and confidential information at issue."  Although Pfizer believes Defendants will readily find the answer to this question in the documents already produced, in the interest of compromise, Pfizer will run this term for the following custodians with the following modifications:

---

[1] Defendants' *entire* GLP-1 program, on the other hand, is relevant to this action because Pfizer's allegation is that Defendants used the trade secrets stolen from Pfizer to streamline and accelerate Defendants' GLP-1 program—which only began as a result of that misappropriation.  As such, Defendants' purported discoveries and scientific dead ends (or lack thereof) would indicate whether or not Defendants were relying on the trade secrets stolen from Pfizer to guide their research.  It is therefore entirely appropriate and necessary for defendants to run broad search terms and produce documents broadly regarding their GLP-1 program whereas it is not appropriate for Pfizer to do so.  Pfizer also notes that Defendants have themselves refused to run the broader GLP-1-related searches.

**Davis Polk**  Alexandre Tschumi

Charlotte Allerton, David Griffith, Christopher Holliman, Amit Kalgutkar, Mark Noe, Jeffrey Pfefferkorn, and Patrick Verhoest

- Date Range: 1/1/2016-4/3/2019
    - (protect* OR secur* OR restrict*) w/5 ("trade secret" OR confidential* OR "need to know") AND (GLP OR GLP-1 OR GLP1 OR GLP-1R OR GLP1R OR "glucagon-like peptide-1")]

\*       \*       \*

We are available to discuss the foregoing at a mutually convenient time if it would be helpful to do so.

Sincerely,

James Y. Park

**Electronic Delivery**

August 19, 2022                                                                                                                                          6