UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Pfizer Inc., <br><br> Plaintiff, <br><br> v. <br><br> Regor Therapeutics Inc., *et al.*, <br><br> Defendants. | Civil No. 3:22-cv-00190 (JAM) <br><br> February 3, 2023 |

**RULING AND ORDER ON**
**DEFENDANTS' MOTION TO COMPEL (ECF No. 105)**

The defendants, Regor Therapeutics Inc. *et al.* ("Defendants"), have moved the Court for an order compelling the plaintiff, Pfizer Inc. ("Pfizer"), to produce thirty-five documents withheld from production under claims of attorney-client privilege and work product protection. (Defs.' Mot. to Compel Prod. by Pl., ECF No. 105, at 1) ("Motion"). For the following reasons, the Court will grant the Motion.

**I.   BACKGROUND**

This is a trade secret case arising out of Pfizer's efforts "to develop a revolutionary new diabetes-and-obesity treatment." (Compl., ECF No. 1, ¶ 2.) Pfizer alleges that two former employees – the defendants Min Zhong and Xiayang Qiu – "decided to steal the hard work of [its] scientists and clinicians" on this treatment "for their own profit and gain." (*Id.*) "While still employed at Pfizer," Zhong and Qiu allegedly "set up . . . Regor . . . on the side, met with international financial backers to fund Regor, and co-opted Pfizer's investment and hard work, all to benefit themselves, Regor, and a second company they founded, Defendant QILU Regor Therapeutics." (*Id.* ¶ 3.) Pfizer has sued the two Regor entities, along with Zhong and Qiu, for violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836 *et seq.*; violations of the

1

Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50 *et seq.*; and for other statutory and common law violations.  (*See generally id.*)

Zhong and Qiu resigned from Pfizer on June 12, 2018.  (*Id.* ¶ 75.)  A little more than five months later, Regor filed a patent application "describing a set of . . . compounds that," in Pfizer's view, "appear strikingly similar to . . . compounds that Pfizer had developed."  (*Id.* ¶ 77.)  Pfizer says that it did not know about this application until it was published over a year afterward, on May 28, 2020.  (*Id.* ¶ 79.)  Soon after publication, Pfizer launched "an investigation of [the] Defendants' conduct," "which included forensic analysis of various Pfizer repositories, including Zhong's and Qiu's company-issued laptops and work e-mail accounts[.]"  (*Id.* ¶ 39.)  The investigation was initiated by Brian Coleman, the Senior Director of Pfizer's Digital Forensics and Investigation Team, assertedly "at the direction of Pfizer's in-house counsel and in anticipation of likely litigation."  (Pl.'s Memo. of L. in Opp'n to Defs.' Mot. to Compel, ECF No. 116, at 3) ("Opp'n").

Pfizer also contacted the FBI.  (*Id.* at 3-4.)  Five years before, the FBI had launched "a 'nationwide awareness campaign' to encourage private companies to share information with" the agency "when they uncover evidence of trade-secret theft."  (*Id.* at 4.)  As part of this campaign, each of the FBI's 56 field offices appointed "a strategic partnership coordinator (SPC) whose role is to proactively develop relationships with local companies, trade groups, industry leaders, and others so that if an incident occurs, a liaison has already been established."  (*Id.* at 4) (quoting Fed. Bureau of Inv., *FBI Launches Nationwide Awareness Campaign* (July 23, 2015).[1]  Pfizer says that it construed these and other communications as invitations to contact the FBI if it ever concluded

---

[1] Available at: https://www.fbi.gov/news/stories/economic-espionage (last viewed Feb. 3, 2023).

that its trade secrets had been stolen, and as assurances that the Bureau "would collaborate with Pfizer on investigating Defendants further to protect Pfizer's trade secrets." (*Id.* at 5, 13.) Thus, when it concluded that Zhong and Qiu had stolen key elements of its diabetes treatment, Pfizer "shared confidential information with the FBI regarding Defendants." (*Id.*)

Pfizer then filed this lawsuit, and when the Defendants served their Rule 34 document production requests, Pfizer responded by withholding thirty-five e-mails and text messages between itself and the FBI under claims of attorney-client privilege and work product protection. As disclosed by Pfizer's privilege log, the thirty-five e-mails and messages fall into two principal groups and five sub-groups:

- Communications from Pfizer to the FBI, in which:
    - Pfizer shared information for the purpose of helping someone – it does not say who – to "provid[e] . . . legal advice regarding [a] criminal investigation" (Ex. A to Defs.' Memo. of L., ECF No. 107, at entry nos. 526, 530, 1137, 1481, 1485, 1489);
    - Pfizer disclosed its own legal analyses to the agency (*id.* at entry nos. 1494, 1495); and
    - Pfizer "provid[ed] information requested regarding criminal investigation," without any asserted connection to the "provision of legal advice." (*Id.* at entry nos. 528, 529, 531, 1135, 1140, 1144, 1488, 1491, 1493, 1499, 1750, 1751, 1752.)
- Communications from the FBI to Pfizer, in which:
    - the FBI "request[ed] information" from Pfizer regarding a "criminal investigation" (*id.* at entry nos. 527, 1483, 1500, 1501, 1503, 1504); and

3

- o the FBI "provid[ed] information" for the purpose of "legal analysis regarding [a] criminal investigation." (*Id.* at entry nos. 1473, 1477, 1479, 1482, 1484, 1487, 1492, 1505.)

Pfizer claimed that each of the thirty-five documents was protected from discovery by the work product doctrine, and that thirty-one of the thirty-five were protected by the attorney-client privilege as well. (*See generally* Opp'n.)

The Defendants have now moved the Court for an order compelling production of the thirty-five documents. (Motion at 1.) They argue that, even if the documents were once protected, Pfizer waived any protection "[b]y expressly relying on and citing its forensic investigation and related findings . . . in this litigation, including in its pleadings[.]" (Defs.' Memo. of L., ECF No. 105-1, at 10) ("Memo.") (citing *Angelone v. Xerox Corp.*, No. 09-CV-6019, 2011 WL 4473534 (W.D.N.Y. Sept. 26, 2011)). They also argue that Pfizer waived any protection that might have attached when it voluntarily shared the documents with the FBI. (*Id.* at 13) (citing, *inter alia*, *United States ex rel. Ortiz v. Mt. Sinai Hosp.*, 185 F. Supp. 3d 383, 389-90 (S.D.N.Y. 2016)). In response, Pfizer principally argues that it did not waive privilege by putting the materials "at issue" (Opp'n at 8-9), and that its voluntary disclosure did not constitute a waiver because it shared a "common interest" with the FBI at the time. (*Id.* at 11.)

The Defendants submitted a reply brief (Reply, ECF No. 122), and the Court heard oral argument on January 25, 2023. The Defendants' Motion is ripe for decision.

**II.   DISCUSSION**

    **A.   Attorney-Client Privilege and Work Product**

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re Cty. of Erie*, 473

F.3d 413, 418 (2d Cir. 2007). The privilege developed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). The attorney-client privilege has three principal elements. "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cty. of Erie*, 473 F.3d at 419 (citing *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). Moreover, "[i]t is well settled that the burden of establishing the existence of . . . [the] privilege, in all of its elements, rests with the party asserting it." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (brackets and quotation marks omitted).

The work product doctrine shields from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3). Its principal purpose is to "shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *U.S. v. Nobles*, 422 U.S. 225, 238 (1975). The doctrine also encourages diligence by "prevent[ing] one party from piggybacking on the adversary's preparation." *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) ("*Adlman I*"); *accord Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring) (the work product rule ensures that one side does not "perform its functions . . . on wits borrowed from the adversary"). Consistent with these purposes, "[t]hree conditions must be met to earn work product protection." *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-Civ.-4978 (LMH), 2002 WL 31556382, at *4 (S.D.N.Y. Nov. 15, 2002)) (brackets omitted). "The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and

5

(3) was prepared by or for a party, or by his representative." *Id.* In this circuit, the second element is satisfied when the document in question is shown to have been "prepared or obtained *because of* the prospect of litigation." *U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) ("*Adlman II*") (emphasis in original). As with the attorney-client privilege, a party invoking the work product doctrine "bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003).

When a party withholds documents under a claim of attorney-client privilege or work product protection, it must "expressly make the claim" and "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i-ii). In this district, the claimant must provide that description in a privilege log meeting the requirements of Local Rule 26(e). When the opposing party challenges a privilege or work product claim with a motion to compel, courts typically expect the claimant to buttress the log's claims with an affidavit or other proof. *See, e.g., Buck v. United States*, No. 3:18-cv-1253 (AWT), 2021 WL 4391090, at *2 (D. Conn. Sept. 24, 2021) ("In requiring a party to prove the factual basis for its claims of privilege, the courts generally look to a showing based on affidavits or equivalent statements that address each document at issue.") (citation omitted). "[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected." *Constr. Prods. Research, Inc.*, 73 F.3d at 473 (citation omitted).

In this case, Pfizer has not adequately supported its attorney-client privilege claims. To begin with, its privilege log discloses that none of the thirty-five documents were confidential communications between itself and its lawyers. (Ex. A to Memo., ECF No. 107.) All were e-

6

mails or text messages between Pfizer and the FBI, and while Pfizer lawyers were copied on some, it is well established that the mere copying of an attorney does not cloak a communication with privilege. *Imperati v. Semple*, No. 3:18-cv-1847 (RNC) (TOF), 2020 WL 6441007, at *17 (D. Conn. Nov. 3, 2020); *In re Signet Jewelers Ltd. Secs. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y. 2019) ("While it is true that Signet in-house counsel were copies on the e-mails . . . that does not make them privileged."). Moreover, Pfizer has provided no support for the proposition that, in corresponding with the FBI, it was seeking confidential legal advice. Its log reveals that some communications "provid[ed] information requested for the provision of legal advice" (*e.g.*, Ex. A to Memo., ECF No. 107, at entry nos. 526, 530), but it says nothing about who that advice was expected to come from or go to, and it has not cleared up the mystery with an affidavit.

Pfizer has likewise failed to support its work product claims. It argues that all thirty-five documents "incorporated the 'mental impressions, conclusions, opinions, or legal theories' of [its] in-house or outside counsel." (Opp'n at 11) (quoting *Adlman* II, 134 F.3d at 1197). But its privilege log does not say this (*see* Ex. A to Opp'n, ECF No. 107), and in response to the Defendants' motion to compel, it came forward with no affidavit or other proof on this point. Pfizer says that its forensic investigation was "directed" by its in-house counsel "to prepare for potential litigation" against Zhong and Qiu, but it has provided no evidentiary support for this claim either. (Opp'n at 10-11.) It cites Coleman's deposition transcript, but the cited passages say little about attorney direction, and nothing about anticipation of or preparation for litigation.[2] The

---

[2] Pfizer cites pages 42:17-43:8, but in that passage, Coleman states only the date on which he was "first asked to investigate" Zhong and Qiu. He does not say that the request came from an attorney, nor that Pfizer was preparing for litigation at the time. (Ex. 2A to Opp'n, at 42-43.) Pfizer also cites page 71 at lines 1 through 14, but that passage concerns a conversation that Coleman had with its in-house counsel "*following* [his] investigations" of the two defendants, not before. (*Id.,* at 71) (emphasis added). At page 129:4-10, Coleman said only that he received a request from Pfizer lawyer Lisa Samuels to investigate Zhong and Qiu sometime "in 2020[;]" he

only support for Pfizer's claim is the unsworn statement in its brief, and it is well settled that such statements are insufficient. *E.g., OneBeacon Ins. Co. v. Forman Int'l, Inc.*, No. 04-Civ.-2271 (RWS), 2006 WL 3771010, at *4 (S.D.N.Y. Dec. 15, 2006) (holding that a privilege claimant's burden is not met "by mere conclusory or ipse dixit assertions in unsworn motion papers authored by attorneys") (citation and quotation marks omitted).

Ordinarily the Court would consider giving Pfizer another chance to prove its privilege and work product claims through a late-filed affidavit or *in camera* review. In *NovaFund Advisors, LLC v. Capitala Group, LLC*, for example, the Court gave a defendant several chances to prove its privilege claims, because "'privileges serve important values' [and] 'courts are not quick to find that they have been waived'" by formal non-compliance with proof requirements. No. 3:18-cv-01023 (MPS) (TOF), 2021 WL 2109112, at *6 (D. Conn. May 25, 2021) (quoting *Imperati*, 2020 WL 4013304, at *5). Here, however, no purpose would be served by an affidavit or *in camera* review – because even if the documents were protected in the first instance, Pfizer has waived that protection for the reasons to be discussed next.

B.   **Waiver of Attorney-Client Privilege and Work Product Protection**

Attorney-client privilege and work product claimants bear the burden of showing that they have not waived the protection. *Universal Std. Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019) (stating, with respect to the attorney-client privilege, that "[t]he party invoking the privilege also has the burden to show that the privilege has not been waived"); *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002) (stating, with respect to work product, that

---

did not say when, nor did he say that Pfizer was preparing for litigation at the time. (*Id.,* at 129:4-10.) And at pages 223:4-224:4 he referenced a request for an "analysis" from the "legal division," but he did not locate that request in time or state that it was made in anticipation of litigation. (Ex. 2B to Opp'n, at 223:4-224:4.) More broadly, Coleman did not testify that any of the thirty-five contested documents contained protectable work product. (*See generally* Exs. 2A & 2B to Opp'n.)

"[t]he party asserting the protection . . . has the burden of showing both that the protection exists and that is has not been waived"). Yet since "the protection which attaches to attorney-client communications serves a different purpose than that which relates to work product, each may be waived in different ways, and conduct which waives one privilege does not necessarily lead to a waiver of the other." *Spanierman Gallery, Profit Sharing Plan v. Merritt*, No. 00-CIV-5712-LTS-THK, 2003 WL 22909160, at *2 (S.D.N.Y. Dec. 9, 2003).

The chief purpose of the attorney-client privilege is to "encourage[] clients to confide in their attorneys fully and frankly, free from apprehension of disclosure[.]" *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992). "Because the privilege requires that protected communications be made in confidence and kept confidential, disclosure of a privileged communication to a third party, other than someone with whom the party shares a common interest and who is bound to maintain its confidentiality, will result in a waiver of the privilege." *Spanierman Gallery*, 2003 WL 22909160, at *2.

The work product doctrine has a different rationale, and therefore presents different waiver considerations. "The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir. 1993). Work product protection is therefore "not automatically waived once produced to a third party." *Spanierman Gallery*, 2003 WL 22909160, at *2. "Rather, it is waived when its production to another is inconsistent with the protection." *Id.* (citing *GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 51 (S.D.N.Y. 1979)). While a party may show its work product to others "simply because there was some good reason to show it," *Adlman II*, 134 F.3d at 1200 n.4, "[o]nce a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears." *Steinhardt*, 9 F.3d at 235. A party therefore waives work

9

product protection when it discloses those thought processes to its adversary, and when it discloses them to a non-adversary in a way "that substantially or materially increases the likelihood that an adversary will obtain the information[.]" *Spanierman Gallery*, 2003 WL 22909160, at *3 (quoting *Bank of Am., N.A.*, 212 F.R.D. at 170) (quotation marks omitted).

With respect to Pfizer's attorney-client privilege claims, the Court concludes that even if the information in the thirty-one e-mails and text messages had once been protected, Pfizer waived that protection by disclosing it to the FBI. While a government-compelled disclosure of attorney-client communications ordinarily does not work a waiver of privilege, *cf. Bank Brussels Lambert v. Credit Lyonnaise (Suisse) S.A.*, 160 F.R.D. 437, 443 (S.D.N.Y. 1995), in this case Pfizer's disclosure was entirely voluntary. Moreover, Pfizer has not demonstrated the existence of a common interest between itself and the FBI at the time of the disclosure. The "common interest rule" "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel[,]" *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989), but here, Pfizer has not shown any such joint effort or strategy. It concedes that the FBI was not even investigating Zhong and Qiu at the time of its first document disclosure (Hrg. Tr., ECF No. 127, at 4:11-17), and it has not shown that the FBI ever embraced its position and formed common cause with it. Additionally, Pfizer did not obtain a confidentiality agreement from the agency before disclosing the documents. (*Id.* at 9:17-18.) The *Spanierman Gallery* court found a waiver of attorney-client privilege under essentially identical circumstances. 2003 WL 22909160, at *3 (finding a waiver of attorney-client privilege where client voluntarily produced attorney-client communications to FBI without a joint defense agreement or confidentiality

agreement, at a time when the FBI had "simply agree[d] to undertake an investigation" and had "not determined that [the client's] position was sound").

With respect to work product, "the decisions in the law involving waiver by production to governmental authorities . . . fall roughly into three categories." *Info. Res., Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 591 (S.D.N.Y. 1991). The first category includes cases in which the private party and the government agency were allied in an active litigation; courts in these cases have generally concluded that disclosure of work product by the private party to the agency does not constitute a waiver. *E.g., Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466-67 (11th Cir. 1984) (finding no waiver when private litigant shared work product with the EEOC, with which it was jointly preparing for a trial). The second category includes cases in which "the documents were submitted under some coercion to a governmental authority which was not expected to reveal the material to the producing party's adversary." *Info. Res., Inc.*, 999 F. Supp. at 592. The results in these cases can turn on the level of coercion involved. *See, e.g., Steinhardt*, 9 F.3d at 235 (holding that voluntary production to the SEC to forestall enforcement proceedings constituted a waiver of work product protection). The third category includes those cases in which the private party voluntarily discloses its work product to a government agency "to incite it to attack the informant's adversary." *Info. Res., Inc.*, 999 F. Supp. at 593.

Courts have generally found the protection to be waived in the third category of cases. In *Information Resources*, for example, the plaintiff claimed work product protection for documents shared with the Department of Justice's Antitrust Division "to foster action by those antitrust authorities against the defendants[.]" 999 F. Supp. at 591. "[T]he plaintiff and the government were neither adversaries nor allies when the documents were submitted[;]" rather, the plaintiff merely "sought to persuade uncommitted agencies to initiate actions which would

11

disadvantage its competitor and perhaps provide plaintiff with the advantages of collateral estoppel from a governmentally-litigated favorable judgment, or at least useful evidence from a governmental authority's investigation." *Id.* at 593. The court held that, under those circumstances, "protection is waived for materials submitted voluntarily to stimulate beneficial official action." *Id.* "This vindicates the principle of full disclosure, prevents the unfairness of selective revelations, and reflects the common-sense perception that in most such cases the privacy attending creation of the work-product had either served its purpose or was of little importance in the first place." *Id.*

Another court reached a similar result in *Sidari v. Orleans County*, No. 95-CV-7250, 2000 WL 33407343 (W.D.N.Y. Oct. 3, 2000). In that case, the plaintiff alleged that the defendants had discriminated against him in his employment because of his national origin and religion. *Id.*, at *1. His lawyer had conducted tape-recorded interviews of two other county employees, and he provided those recordings to the FBI "in connection with an ongoing F.B.I. investigation of" the county and a criminal trial of an individual defendant. *Id.*, at *6-8. "However, the nature and target of any such investigation [was] unclear." *Id.*, at *8. "Thus, plaintiffs [did] not demonstrate[] that they were litigation allies with the F.B.I., nor [did] plaintiffs present[] any proof of a confidentiality agreement with the F.B.I." *Id.* Citing *Information Resources*, the *Sidari* court held that a "waiver result[ed] from the voluntary submission of material to a government agency to incite it to attack the informant's adversary." *Id.*, at *9 (citing *Info. Res., Inc.*, 999 F. Supp. at 593).

The *Spanierman Gallery* court also reached a similar result. In that case, the plaintiff had purchased a painting that was subsequently seized by the FBI, and it sued two defendants who had previously possessed the painting. *Spanierman Gallery*, 2003 WL 22909160, at *1. One of the

12

defendants had "contacted the FBI to report the circumstances surrounding the loss of the painting, and to get assistance in its return" – and it had shared its work product with the FBI as well. *Id.*, at *1, 5. Acknowledging that the work product issue was "more complex" than the attorney-client privilege issue, the court nevertheless held that the defendant had waived protection. *Id.*, at *4-5. The defendant had "voluntarily produced work product materials to the FBI in an effort to secure its assistance in retrieving the painting, and to encourage it to initiate an investigation of" another individual. *Id.*, at *5. While the FBI and the defendant were not adversaries, "they did not, as Defendant suggests, share a common interest." *Id.* Her "interest in prevailing against" the other individual, "and thereby securing the return of the painting, was not the FBI's interest[;]" to the contrary, the FBI's interest was in "perform[ing] an objective investigation of [the defendant's] allegations." *Id.* Moreover, "[t]he production to the FBI was not made under circumstances which would ensure the confidentiality of the material[,]" because the defendant had neither identified the documents as privileged nor reached an agreement with the agency to treat them as such. *Id.* Thus, "[t]he production to the FBI substantially increased the likelihood that privileged information would be secured by [the defendant's] adversaries." *Id.* "Accordingly, work product protection has been waived[.]" *Id.*

Pfizer cites other cases, but they do not contradict the foregoing principles. *Costabile v. County of Westchester* was a case under the Americans with Disabilities Act, in which the plaintiffs shared a private investigator's report with the Equal Employment Opportunity Commission. 254 F.R.D. 160, 162-63 (S.D.N.Y. 2008). In holding that the plaintiffs had not waived work product protection, the court noted that they "could not bring the ADA claim in this Court without filing a charge with the EEOC," and "the EEOC could not make a determination of probable cause without all of the relevant evidence." *Id.* at 166. The plaintiffs were therefore constrained to share the

13

report, and moreover they did so under circumstances posing "very little chance that the report would be disclosed to defendants." *Id.* In *E.I. Du Pont de Nemours & Co. v. Kolon Industries*, the work product claimant disclosed its information to the FBI *after* the agency had already begun investigating, and that fact was central to the court's holding. No. 3:09-cv-58, 2010 WL 1489966, at * (E.D. Va. Apr. 13, 2010) (distinguishing *Information Resources* on the ground that, "while DuPont may well have precipitated the federal investigation . . . none of the communications it now seeks to protect were made for the purposes of initiating an investigation, but rather were made in connection with an investigation that the government had already begun"). And in *RMS of Wisconsin, Inc. v. Shea-Kiewit Joint Venture*, the court concluded that the contested document fell within the first, rather than the third of *Information Resources*' three categories – because "RMS's attorney was responding to a request by the FBI," not writing proactively to induce the FBI into an investigation that it was not yet conducting. No. 13-CV-1071, 2015 WL 3618300, at *2 (E.D. Wis. June 9, 2015); *see also In re Symbol Techs., Inc. Secs. Litig.*, No. CV-05-3923 (DRH) (AKT), 2016 WL 8377036, at *14 (E.D.N.Y. Sept. 30, 2016) (noting that "district courts within the Second Circuit give the existence of confidentiality agreements weighty consideration in rendering selective waiver decisions," and finding protect not waived in part because "Symbol entered into a confidentiality agreement with both the SEC and U.S. Attorney's Office"); *In re Cardinal Health, Inc. Secs. Litig.*, No. C2-04-575-ALM, 2007 WL 495150, at *9 (S.D.N.Y. Jan. 26, 2007) (finding no waiver when, *inter alia*, company's lawyers and SEC had a written confidentiality agreement). While the Second Circuit has cautioned district courts not to look for *per se* rules in this area, *see Steinhardt*, 9 F.3d at 236, the foregoing cases can be harmonized by observing that a waiver will often be found when a private party voluntarily discloses its work

14

product to the FBI for the purpose of inducing it to investigate an adversary, without first obtaining a written confidentiality agreement.

Applying these principles to this case, the Court concludes that Pfizer has not met its burden to show the absence of waiver. To begin with, Pfizer has not shown that its documents do not belong in *Information Resources'* third category – that is, documents voluntarily disclosed to a government agency "to incite it to attack the informant's adversary." *Info. Res., Inc.*, 999 F. Supp. at 593. Pfizer asserts that "the FBI actually invited this dialog" through its Nationwide Awareness Campaign (Hrg. Tr., ECF No. 127, at 7:5-7), but it concedes that the FBI was not investigating Zhong and Qiu at the time the dialog began. (*Id.* at 4:15-17.) Thus, it seems clear that the documents were not submitted in response to a specific FBI request, as in *RMS of Wisconsin*, but rather were "submitted voluntarily to stimulate beneficial official action." *Info. Res., Inc.*, 999 F. Supp. at 593. Pfizer also concedes that it did not obtain a confidentiality agreement from the FBI before disclosing the information (Hrg. Tr., ECF No. 127, at 9:17-18), and while it claims to have been lulled into inaction by the Nationwide Awareness Campaign's stress on "the importance of safeguarding data privacy" (*id.* at 9:21-25), it acknowledges the possibility that its information would have been disclosed to Zhong and Qiu in the discovery phase of any criminal case. (*Id.* at 12:8-9.) Under these circumstances, disclosing the information to the FBI without first obtaining a confidentiality agreement "substantially or materially increase[d] the likelihood that an adversary will obtain the information" and constituted a waiver of work product protection. *Spanierman Gallery*, 2003 WL 22909160, at *3.

### III. CONCLUSION AND ORDER

Because the Court has resolved the Defendants' motion on the foregoing grounds, it does not reach their arguments that Pfizer waived its privileges by placing its privileged information at

15

issue, or that they can pierce Pfizer's work product claims with a showing of substantial need. The Court also declines the Defendants' request, made for the first time in their reply brief, for an award of fees under Rule 37(a)(5). (Reply, ECF No. 124, at 5.) "The law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered." *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (2d Cir. 2017) (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007)). While the Court "has discretion to consider a belatedly-raised argument," *id.*, it declines to do so here.

For all the foregoing reasons, the Motion of the defendants, Regor Therapeutics Inc. *et al*. to compel production is granted. Pfizer is ordered to produce to the defendants the documents referenced in privilege log entries 526-531, 1135, 1137, 1140, 1144, 1473, 1477, 1479, 1481-1485, 1487-1489, 1491-1495, 1499-1501, 1503-1505, and 1750-1752 by February 17, 2023. D. Conn. L. Civ. R. 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall be made within fourteen (14) days of the filing of the Court's order.").

This is not a recommended ruling. It is a ruling by a Magistrate Judge on a "nondispositive motion[]," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous or contrary to law" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b). It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 3rd day of February, 2023, at Hartford, Connecticut.

                                                  */s/ Thomas O. Farrish*
                                                  Hon. Thomas O. Farrish
                                                  United States Magistrate Judge